## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

**THOMAS & MARKER CONSTRUCTION, CO.**

                  **Plaintiff,**

**-v-**

**WAL-MART STORES, INC., et al.,**

                  **Defendants.**

**Case No. 3:06-cv-406**

**Judge Thomas M. Rose**

---

### ENTRY AND ORDER GRANTING IN PART AND OVERRULING IN PART WAL-MART'S MOTION FOR PARTIAL SUMMARY JUDGMENT (Doc. #78)

---

This dispute arises from a contract between Plaintiff Thomas & Marker Construction Company ("Thomas & Marker") and Defendant Wal-Mart Stores, Inc. ("Wal-Mart"). Thomas & Marker contracted with Wal-Mart to build a Wal-Mart Supercenter in Springfield, Ohio (the "Project") for the lump sum price of $9,611,000.

## I.  PROCEDURAL BACKGROUND

The Complaint in this matter was originally filed in the Court of Common Pleas of Clark County, Ohio. Thomas & Marker was the only named Plaintiff and Wal-Mart was the only named Defendant. (Doc. #3).

The original Complaint was subsequently removed to this Court based upon this Court having diversity jurisdiction. (Doc. #2.) After removal and the Preliminary Pretrial Conference, and upon a Joint Motion for Leave to Amend, Thomas & Marker filed an Amended Complaint. (Doc. #13.)

The Amended Complaint adds Wal-Mart Real Estate Business Trust, Jergens Bales

Contractors ("Jergens Bales") and the Clark County Treasurer as Defendants. Jergens Bales and the Clark County Treasurer are citizens of Ohio. The Amended Complaint also adds a claim for foreclosure of a mechanics lien on the subject property, adds a claim against Wal-Mart and brings various claims against Jergens Bales.

Wal-Mart Real Estate Business Trust is the owner of the property that is at issue in the Amended Complaint. Jergens Bales was hired by Thomas & Marker as a subcontractor to install the water line and excavate the rock at issue in this case. Jergens Bales also had a mechanics lien on the subject property. The Clark County Treasurer was allegedly necessary to Thomas & Marker's foreclosure action by virtue of his duty to collect real estate taxes.

Adding Jergens Bales and the Clark County Treasurer destroyed the diversity of citizenship that was present when Thomas & Marker's original Complaint was filed. When the lack of diversity was discovered, the Parties were required to show cause as to why this matter should not be remanded to the Court of Common Pleas of Clark County, Ohio. (Doc. # 71.)

Thomas & Marker responded to the Show Cause Order by filing a Motion for Leave of Court To Dismiss Jergens Bales and the Clark County Treasurer arguing that this would completely restore diversity jurisdiction. (Doc. #72.) Following discussion among the Parties and with the Court, the Parties submitted and the Court approved an Agreed Entry that dismisses Thomas & Marker's foreclosure claim with prejudice. The Agreed Entry also dismisses all of Thomas & Marker's claims against Jergens Bales and the Clark County Treasurer with prejudice. Finally, Jergens Bales expressly disclaims any claims against Wal-Mart which may arise out of the subject matter of this action.

The First Claim for Relief in Thomas & Marker's First Amended Complaint, which is the

-2-

Complaint that is now before the Court, is against Wal-Mart for breach of contract. The Second

Claim for Relief is against Wal-Mart for breach of an implied warranty of suitability of plans,

specifications and geotechnical reports. The Third Claim for Relief is against Wal-Mart for

breach of an implied warranty of accuracy of plans, specifications and geotechnical reports.

Thomas & Marker's Fourth Claim for Relief is against Wal-Mart for unjust enrichment

(quantum meruit and quantum valabant). The Fifth Claim for Relief is against Wal-Mart for

promissory/equitable estoppel. The Sixth Claim for Relief is against Wal-Mart for breach of an

implied duty of good faith and fair dealing. The Seventh Claim for Relief is for costs, expenses

and fees pursuant to § 23.16 of the Construction Agreement. Thomas & Marker's Eight Claim

for Relief for foreclosure on a mechanic's lien has been dismissed. The Ninth Claim for Relief

is against Wal-Mart for fraud in the inducement. Thomas & Marker's Tenth, Eleventh, Twelfth,

Thirteenth, Fourteenth, Fifteenth and Sixteenth Claims for Relief are against Jergens Bales who

has been dismissed.

On May 18, 2007, Wal-Mart answered Thomas & Marker's First Amended Complaint.

(Doc. #16.) Included with Wal-Mart's Answer is a counterclaim against Thomas & Marker. The

First Counterclaim is for breach of contract, the Second Counterclaim is for unjust enrichment,

the Third Counterclaim is for promissory estoppel and the Fourth Counterclaim is for costs,

expenses and fees pursuant to § 23.16 of the construction contract. Also included with Wal-

Mart's Answer is Wal-Mart's Third-Party Complaint against Ohio Farmers Insurance Company

for action on bond and a declaratory judgment.

Remaining to be adjudicated are Thomas & Marker's First, Second, Third, Fourth, Fifth,

Sixth, Seventh and Ninth Claims for Relief against Wal-Mart. Also remaining to be adjudicated

are Wal-Mart's First, Second, Third and Fourth Counterclaims against Thomas & Marker and

Wal-Mart's claims against Ohio Farmers Insurance Company.

Now before the Court is Wal-Mart's Motion for Partial Summary Judgment. Wal-Mart

seeks summary judgment on Thomas & Marker's First, Second, Third, Fourth, Fifth, Sixth and

Ninth Claims for Relief. This Motion is now fully briefed and ripe for decision. A factual

background will next be set forth followed by the standard of review and an analysis of Wal-

Mart's motion.

## II.     FACTUAL BACKGROUND

## A.     Introduction

On December 22, 2003, Wal-Mart issued a bid package to several qualified bidders,

including Thomas & Marker, for construction of the Project. To become a qualified bidder,

employees of Thomas & Marker participated in an interview process with Wal-Mart

representatives. (Deposition of Randall Marker ("Marker Dep.") 36, Jan. 14, 2008.)

Wal-Mart contracted with CESO to serve as the Project's civil engineer. (Deposition of

James V. Fountain ("Fountain Dep.") 59, Oct. 30, 2007.) Part of CESO's scope of work was to

provide Wal-Mart with an accurate geotechnical report. (Wal-Mart's Motion for Leave To File

Third Party Complaint Doc. #57.) CESO engaged TesTech to provide the Soil Borings Report.

(Deposition of David Oakes ("Oakes Dep.") 7, Mar. 28, 2008.) CESO and TesTech are both

owned by David Oakes ("Oakes"). (Id. at 5-6.)

The Soil Borings Report contained geotechnical data of subsurface conditions based

upon 62 separate test borings conducted by multiple drilling rigs over a period of several weeks.

(Deposition of Richard S. Weigand ("Weigand Dep.") 46-47, Ex. 12 Mar. 27, 2008.) Test

borings were made as certain pre-determined intervals throughout the approximately 19-acre Project site. (Oakes Dep. 10-11.) TesTech performed the soil borings over a six (6) to seven (7) week period from mid-May to early July of 2004. (Weigand Dep. 72; Deposition of Stephen C. Pasternak ("Pasternak Dep.") 133-34, Mar. 27, 2008.) There is evidence that test borings were drilled at locations different from those identified on the borings location plan. (Oakes Dep. 26-27; Pasternak Dep. 166-68.)

A few weeks before the bid deadline for the Project, CESO issued a supplemental soil borings report titled "Addendum Report No. 3." (Deposition of Benjamin A. White ("White Dep.") Ex. 2, Feb. 29, 2008.) This addendum was sent to all bidders and was to be added to the bid package. (Id.)

Thomas & Marker timely submitted a bid and was awarded the Project. On June 30, 2005, Wal-Mart and Thomas & Marker executed the Construction Agreement. (Wal-Mart's Motion for Partial Summary Judgment Ex. 1.) Thomas & Marker agreed to build the Project for the lump sum price of $9,611,000. (Id.) Included in this figure was a lump sum bid of $732,500 for the earthwork to be performed on the site. (Bid Form; Marker Dep. 102.)

This bid was accepted by Wal-Mart and the Contract Documents were executed. In addition to the Construction Agreement, the Contract Documents include the bid package, the General Conditions, the Supplementary Conditions, the Special Conditions for Wal-Mart Stores, Inc. Construction (the "Special Conditions"), plans, specifications, site and grading plans, all prints and drawings along with any agenda, change orders or other documents provided for under the Contract Documents. (Am. Compl. ¶7.) The Special Conditions specifically reference the Soil Borings Report prepared by TesTech. (Deposition of Brett Pequignot ("Pequignot Dep.")

Ex. 3, Sept. 17, 2007.)

Thomas & Marker entered into a subcontract with Jergens Bales Contractors, Inc. ("Jergens Bales") on July 20, 2005, that included the site excavation for the building, foundation, truck ramp and site utilities. (Pequignot Dep. 38.) Thomas & Marker agreed to pay Jergens Bales for rock removal on a unit cost basis. (Deposition of Karl McCartney ("McCartney Dep.") 64, Jan 31, 2008.)

**B.      Relevant Document Provisions**

**1.      The Construction Agreement**

The Construction Agreement is a contract between Wal-Mart and Thomas & Marker for construction of the Project. The Project is identified as a Wal-Mart Supercenter in Springfield, Ohio. Wal-Mart is identified as the Owner and Thomas & Marker as the Contractor. Scott & Goble is identified as the Architect and CESO as the Engineer. Larnel Sanders is identified as the Owner Construction Manager.

The Construction Agreement identifies the documents that govern Thomas & Marker's obligations. Included are the General Conditions, the Supplementary Conditions, the Special Conditions, the specifications issued by the Architect, the Architectural Plans, the Site and Grading Plans, the Bid Form and Addenda issued by the Owner, the Architect and the Engineer.

The Construction Agreement also contains provisions regarding changes to the Work. It specifically provides that any work performed by the Contractor which is different from or in addition to the Work described in the Contract Documents must be set forth in a Construction Change Directive if issued by the Owner or Owner's design consultant or by a Preliminary

Change Order Budget[1] ("PCOB") submitted by the Contractor to the Owner within seven days after discovery of an Unforeseen Condition.[2] Exceptions are work described in a fully executed Change Order and minor changes in the Work issued by the Owner pursuant to the Supplementary Conditions.

In addition to "Unforseen Conditions," additional work may result from a Construction Change Directive. After a Construction Change Directive has been issued to the Contractor or "Unforseen Conditions" are discovered, the Contractor must submit a PCOB for such construction within seven (7) days. Further, the PCOB must be approved by the Owner prior to the commencement of the work described in the PCOB. Any such work performed without Owner approval "may result in non-payment." Further, "the PCOB is in no way a commitment by Owner and/or Contractor for adjustment of the Contract Sum." Finally, the Contractor is to submit a final Change Order to the Owner which includes the actual costs and expenses related to the PCOB no less than thirty (30) days after issuance of the PCOB.

The Construction Agreement next addresses the Project schedule. The Work was to commence on or before June 20, 2005 and, subject to authorized adjustments, was to be completed by March 8, 2006.

The Contractor is to provide all of the materials, equipment, supplies and personnel to

---

[1]The PCOB process "is not intended to replace any contract provision for Change Orders that is set forth in Article 7 of the General Conditions, Article 7 of the Supplementary Conditions or any other provision of the Contract Documents."

[2]An "Unforeseen Condition" is described as "a condition encountered at the Project site which was not reasonably discoverable prior to the deadline for submitting the Contractor's Bid Form for the Project through the exercise of due diligence by the Contractor."

complete the Work as set forth in the Contract Documents. The Contractor also is to provide the services and labor necessary to complete the Work. Finally, the Contractor is to secure, maintain and comply with all required licenses, permits and certificates relating to or otherwise necessary to the performance of the Work.

The contract sum is $9,611,000. The Construction Agreement provides for monthly progress payments toward that sum and defines when and upon what conditions the final payment is due.

The parties to the Construction Agreement agree that the Contract Documents constitute the full understanding of the parties and all prior agreements, negotiations and understandings are superseded by and merged into the Contract Documents. Also, the terms of the Contract Documents can only be modified or amended by a written agreement signed by the Owner and the Contractor.

The Construction Agreement provides that, in the event of any action or proceeding by either party against the other under the Contract Documents, the prevailing party will be entitled to recover all costs and expenses, including court costs and reasonable attorneys' fees. The Construction Agreement was signed by Patrick Ellis, Thomas & Marker Executive Vice President, on June 30, 2005, and by Jon Sandeen, Vice President of Construction for Wal-Mart on July 11, 2005.

## 2. General Conditions

The General Conditions are the General Conditions of the Contract for Construction, AIA Document A201 dated 1997. These general conditions include: general provisions; identification and responsibilities of the Owner and Contractor; a description of how the contract

is administered, including the disposition of claims and disputes; a discussion of subcontractor roles and responsibilities; a description of the Owner's right to perform the work; a discussion of how changes in the Work are to be addressed; provisions for applications for payments; provisions for construction safety including the handling of hazardous materials; responsibility for various insurance and bonds; provisions for correction of the Work; and other miscellaneous contract provisions. The portions of the General Conditions that are relevant to the issues in this case have been modified by the Supplementary Conditions and will be more fully described thereunder.

**3.     Supplementary Conditions**

The Supplementary Conditions address the same issues as the General Conditions and modify, change, delete from or add to the General Conditions.  Only those issues relevant to the matter that is now before the Court will be detailed hereinafter.

The general provisions of the Supplementary Conditions discuss Contractor responsibility for the accuracy of its bid. The general provisions provide that:

> 1.5.2 The Contractor shall thoroughly examine all factors reasonably available to it, including but not limited to the Drawings, Specifications, soils report, site boundary and topography, site conditions, site history, local information, and seasonal weather conditions in the preparation of the Contract Sum. Soil report data shall not be deemed to be accurate or complete, and it is the Contractor's responsibility to further investigate site conditions as it determines necessary. The Contractor shall be totally responsible for acceptance of the Work site and preparation of the Work site to the proper grade and compaction requirements as indicated by the Drawings and Specifications. Any Work performed by the Contractor on the Project will constitute acceptance of the Work site.

The Supplementary Conditions also discuss information provided by the Owner. The Owner is to furnish surveys describing physical characteristics, legal limitations and utility locations. The Soil Report is specifically discussed as follows:

-9-

2.2.3.1 A soil investigation report has been made for this Project and a log of borings has been prepared. The report and log were obtained solely for use by the Architect/Engineer in design and are not a part of the Contract Documents. The soil investigation report and log of borings are being furnished to the Contractor as general information only, and are not, and shall not be deemed to constitute, a representation or warranty of subsurface conditions. Neither the Owner nor the Architect/Engineer assume responsibility for the accuracy or completeness of this report or the log of borings.

Contractor responsibility is discussed in article 3. Among other responsibilities:

3.2.1.2 The Contractor shall be responsible for determining the conditions of the existing site, including all existing improvements, paving, utilities, and construction, and shall have accounted for such conditions in the preparation of its bid and shall not be entitled to additional compensation as the result of not being familiar with the existing site conditions. If Contractor encounters Unforseen Conditions, Contractor may submit a PCOB to Owner in accordance with Section 3.3 of the Contract.

Regarding contract claims and disputes, the Supplemental Conditions provide that the term "Claim" does not apply to Unforseen Conditions. Unforseen Conditions are to be governed by the provisions of Section 3.3 of the Contract and Article 7 of the General Conditions and the Supplementary Conditions, Article 4.3.1.

The Supplemental Condition regarding claims and disputes further discusses Unforseen Conditions in Article 4.3.4:

If the Contractor encounters concealed or unknown conditions that constitute Unforseen Conditions, Contractor may submit a PCOB to Owner in accordance with Section 3.3 of the Contract and Article 7 of the General Conditions and these Supplementary Conditions.

In the event "Rock Excavation" is required in the construction of this Project, the following criteria shall apply:

.1 "Rock Excavation" is described as igneous, metamorphic or sedimentary rock that cannot be removed by rippers or other mechanical methods and, therefore, requires drilling and blasting.

.2 The excavation and disposal of all "Rock Excavation" that is indicated

-10-

by the soils report shall be considered unclassified excavation and shall be included with the site work grading as part of the lump sum base bid.

.3 If "Rock Excavation" is required that is not indicated by the soils report and constitutes an Unforseen Condition, Contractor may submit a PCOB to Owner in accordance with Section 3.3 of the Contract and Article 7 of the General Conditions and these Supplementary Conditions.

The Supplemental Conditions provide that the Contract will be administered by the Owner instead of the Architect. Further, the Parties agree that mediation and arbitration will not be used to resolve claims and disputes.

**4.     Special Conditions**

The Special Conditions sets forth conditions specifically applicable to bidding on the Project. Relative is the list of documents that the Contractor should receive and review in preparation of a Bid Proposal:

Site Development Plans prepared and issued by CESO, Inc. …

Architectural Plans prepared and issued by Scott & Goble Architects.…

Project Manual prepared and issued by Scott & Goble Architects which includes the Sitework Specifications issued by CESO, Inc.…

Geotechnical Report prepared by TesTech, Inc., dated August 13, 2004, and issued by CESO, Inc. (The Geotechnical Report is provided for information only and not considered as a design specification.)

Phase I Environmental Assessment Update Report prepared by TesTech, Inc. and issued by CESO, Inc., dated February 2, 2005. (The Environmental Report referenced here is provided for information only and not considered as a design specification.)

Sitework Permits

The Special Conditions also extensively discuss environment compliance and storm water pollution prevention at the Project site.

-11-

5.      **Bid Form**

On June 6, 2005, Thomas & Marker submitted its bid for the Project on the forms provided by Wal-Mart. Thomas & Marker's total bid was $9,611,000. Brett Pequignot is identified as Thomas & Marker's Project Manager. David Hughes and Tim Miller are identified as Thomas & Marker's Project Superintendents.

C.      **Construction of the Project**

Thomas & Marker and its subcontractors began site excavation on the Project in late July or early August of 2005. (Pequignot Dep. 40.) Shortly thereafter, Thomas & Marker encountered rock at elevations higher than indicated in the Soil Borings Report. (Id. 40-41.)

Thomas & Marker submitted a PCOB, dated September 23, 2005, to Wal-Mart detailing the work associated with removing the unexpected rock. (Pequignot Dep. Ex. 2.) The PCOB indicates a budgeted amount of $1,072,500. (Id.) Karl D. Keller approved the PCOB for Wal-Mart and Pequignot signed the PCOB as Thomas & Marker's Project Superintendent. (Id.) Larnel Sanders, one of Wal-Mart's Construction Managers, was aware of the quantities of rock that Thomas & Marker was encountering at differing elevations and told Thomas & Marker to "track your quantities." (Pequignot Dep. 69-70; Hughes Dep. 59.)

Jergens Bales, Thomas & Marker's subcontractor for site excavation, could not remove the rock using the excavators that they had planned to use for the sitework. (Deposition of David W. Hughes ("Hughes Dep.") 63, Sept. 18, 2007.) They next brought in two special pieces of equipment used to remove "diggable" rock. (Id. 64.) These special pieces of equipment "had a single ripper tooth on one of them" and a  bucket meant for digging rock on the other one. (Id.)

When these two pieces of equipment were not able to remove the rock, Jergens Bales

brought in a Vermeer trencher. (Id. 65.) Vermeer trenchers are very specialized and there are

very few of them in the U.S. (Id.) Jergens Bales actually ended up with two Vermeer trenchers,

and, using these trenchers, they were able to remove the rock. (Id. 70.) The site excavation,

including the excavation for utilities, for the truck ramp and for the building foundation, was

completed without any drilling or blasting being required. Deposition of Rodney Trimbach

("Trimbach Dep.") 102-03, Sept. 19, 2007; Pequignot Dep. 80.) It is estimated that Thomas &

Marker excavated approximately 5,500 cubic yards of rock which was not indicated in the

geotechnical report. (Weigand Dep. 156-59, Ex. 26.)

Rock excavation continued throughout the fall of 2005 and into January of 2006.

(Pequignot Dep. 74; Hughes Dep. 69.) During this time period, Wal-Mart's Construction

Managers continued to instruct Thomas & Marker to track all costs associated with the rock

removal. (Hughes Dep. 58-61; Pequignot Dep. 40.) Thomas & Marker alleges that it incurred

costs in the amount of $1,296,400 to remove the unforseen rock. (Pequignot Dep. 89-90.)

**D.      Change Order No. 4**

On December 21, 2005, Thomas & Marker submitted Change Order No. 4.0 to Wal-Mart

requesting payment for excavation of the rock. (Pequignot Dep. Ex. 2.) Therein, Thomas &

Marker requested $1,083,304.66 to "complete all work related to the removal of the

extraordinary amount of rock that was encountered above and beyond the elevations reflected

within the TesTech boring report dated April 29, 2005…." (Id.)

Wal-Mart issued a response to Change Order No. 4.0 on January 11, 2006, requesting

additional substantiation. (Id.) Over the next several months, Thomas & Marker submitted, at

Wal-Mart's request, additional substantiation of the costs and elevation data implicated in

Change Order No. 4.0 on three separate occasions. Affidavit of Brett C. Pequignot ("Pequignot Aff.") ¶ 5, Jul. 9, 2008.) These additional submissions resulted in Change Orders No. 4.1, 4.2 and 4.3. (Id.)

The Change Orders were evaluated by Wal-Mart Senior Estimator Tom Perko ("Perko"). (Affidavit of Tom Perko ("Perko Aff.") ¶¶ 4-11, Oct. 2, 2007.) As a Senior Estimator, Perko's job was to evaluate requested change orders and make recommendations to Wal-Mart's Construction Department. (Id. ¶¶ 5, 9.) Perko recommended to Jim Fountain ("Fountain"), Wal-Mart's Construction Manager at the time, that Thomas & Marker be paid $748,710.47 for the Change Order. (Id. ¶ 12.)

In late May or June of 2006, Fountain offered to settle Change Order No. 4 for $748,710.47, the amount recommended by Perko. (Pequignot Dep. 89-91.) On July 21, 2006, representatives of Thomas & Marker and Wal-Mart met at Wal-Mart's corporate headquarters in Bentonville, Arkansas to discuss Wal-Mart's offer to settle Change Order No. 4 in light of the disparity between what Thomas & Marker had documented and what had been offered. (Pequignot Dep. 96-98.) Pequignot, Hughes, Randy Marker and Karl McCartney attended for Thomas & Marker. (Id. 98.) Bryan Novak ("Novak"), Fountain and Perko attended for Wal-Mart. (Id. 99.) Perko was the Senior Estimator at the time, Fountain was Wal-Mart's Construction Manager at the time and Novak was Fountain's boss at the time. (Id.)

During this meeting, Novak said that he had no knowledge of any offer being made by Wal-Mart. (Id.) He also indicated that he would be more than willing to discuss the issue and said that he basically just did not understand the change order requests. (Id. 100.) Thomas & Marker then explained "the differences in elevations and so forth." (Id.) Novak responded that he

-14-

did not understand how Wal-Mart's soils reports could have been off and that the testing company's findings did not carry any weight. (Id. 100-01.)

In September of 2006, Wal-Mart issued its final response to the fourth submittal of Change Order No. 4. (Pequignot Dep. Ex. 2.) This response indicates that, "documents clearly show rock on site per Geo Report, Wal-Mart does not agree to the claim. (Id.) Written across the Change Order are the words, " Rejected Do Not Resubmit."

According to Fountain, one of the reasons the Change Order was rejected is that the Project was bid as an "unclassified site." (Fountain Dep. 98-99.) "Unclassified," according to Fountain, means that the site work is included in the bid. (Id.) For a "classified site," Wal-Mart would tell the contractor the quantities and type of soil to be removed. (Id. at 100.) Fountain also says that the rock should not have been a surprise because there were areas of the site that actually had rock at the surface. (Id. at 98.)

**E.      Other Change Orders and Retainage**

With regard to the "unclassified site" concept, Wal-Mart had previously accepted a change order, No. 8, that related to footings that were overexcavated and backfilled as a result of encountering unforeseen rock. (Deposition of Larnel Sanders ("Sanders Dep.") Ex. E, Feb. 20, 2008.) Change Order No. 8 was approved by Wal-Mart on December 5, 2005, and is for "change required for unforeseen site conditions, have to place… concrete and backfilling with clay material due to the rock conditions in areas unexpected." (Id.) This Change Order was signed less than three weeks before Thomas & Marker submitted Change Order No. 4.0.

Thomas & Marker has completed its scope of work in connection with three executed change orders not related to the unforseen rock. (Pequignot Aff. ¶ 7.) Wal-Mart has not paid

Thomas & Marker for these change orders totaling $45,414.68. (Id.)

In addition, Wal-Mart has not paid Thomas & Marker $410,469.60 in retainage. (Id. ¶ 8.) The majority of this retainage is for work unrelated to the rock excavation. (Id.)

Unable to resolve their differences, Thomas & Marker then filed this lawsuit. Thomas & Marker alleges that Wal-Mart owes them damages in the amount of $1,296,400.16 for the rock excavation, $410,469.60 in retainage and $45,414.68 for Change Orders No. 032.1, 034 and 027. for a total of $1,752,284.44. Thomas & Marker also seeks all costs, expenses and reasonable attorney fees incurred in addition to punitive damages of $200,000.

## III.    STANDARD OF REVIEW

The standard of review applicable to motions for summary judgment is established by Federal Rule of Civil Procedure 56 and the associated caselaw. Rule 56 provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

Alternatively, summary judgment is denied "[i]f there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir. 1992)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). Thus, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)).

Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S. at 324.

In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in the favor of that party. *Anderson*, 477 U.S. at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe by determining which parties' affiants are more credible. 10A Wright & Miller, *Federal Practice and Procedure*, §2726. Rather, credibility determinations must be left to the fact-finder. *Id.*

However, the mere existence of a scintilla of evidence in support of the nonmoving party is not sufficient to avoid summary judgment. *Anderson*, 477 U.S. at 252. "There must be evidence on which the jury could reasonably find for the plaintiff." *Id.* The inquiry, then, is whether reasonable jurors could find by a preponderance of the evidence that the nonmoving

-17-

party is entitled to a verdict. *Id.*

Finally, in ruling on a motion for summary judgment, "[a] district court is not …obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091 (1990). Thus, in determining whether a genuine issue of material fact exists on a particular issue, the court is entitled to rely upon the Rule 56 evidence specifically called to its attention by the parties. The Rule 56 evidence includes the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted. Fed. R. Civ. P. 56(c).

In addition to applying the federal procedural standard for motions for summary judgment, as a federal court located in Ohio exercising diversity jurisdiction, this Court must apply Ohio substantive law unless the law of another state is specifically implicated. *Hisrich v. Volvo Cars of N. America, Inc.*, 226 F.3d 445, 449 (6th Cir. 2000). This Court must apply the substantive law of Ohio "'in accordance with the then-controlling decision of the highest court of the state.'" *Imperial Hotels Corp. v. Dore*, 257 F.3d 615, 620 (6th Cir. 2001)(quoting *Pedigo v. UNUM Life Ins. Co.*, 145 F.3d 804, 808 (6th Cir. 1998)).

To the extent that the highest court in Ohio has not addressed the issue presented, this Court must ascertain from all available data, including the decisional law of Ohio's lower courts, what Ohio's highest court would decide if faced with the issue. *Id.; Bailey v. V & O Press Co., Inc.*, 770 F.2d 601, 604 (6th Cir. 1985). Finally, where Ohio's highest court has not addressed the issue presented, a federal court may not disregard a decision of an Ohio appellate court on point unless the federal court is convinced by other persuasive data that the highest court of Ohio

-18-

would decide otherwise. *Puckett v. Tennessee Eastman Co.*, 889 F.2d 1481, 1485 (6th Cir. 1989). **IV.    ANALYSIS**

Wal-Mart seeks summary judgment on Thomas & Marker's First, Second, Third, Fourth, Fifth, Sixth and Ninth Claims for Relief. Each of these Claims for Relief will be addressed seriatim.

**A.    First Claim for Relief for Breach of Contract**

Thomas & Marker's First Claim for Relief alleges that Wal-Mart breached the Contract Documents when it failed to pay Thomas & Marker for expenses incurred in connection with the rock excavation, the retainage and Change Orders Nos. 032, 034 and 027. Thomas & Marker also alleges that Wal-Mart breached the Contract Documents by supplying defective contract documents.

Wal-Mart now argues that Thomas & Marker's breach-of-contract claim fails as a matter of law for four (4) reasons. Thomas & Marker responds that Wal-Mart has waived any contractual defense to Thomas & Marker's entitlement to compensation for unforeseen rock. Each will be addressed seriatim along with Thomas & Marker's responses.

To show that Wal-Mart breached the Contract Documents, Thomas & Marker must show by a preponderance of the evidence that: (1) a contract existed; (2) that Thomas & Marker fulfilled its obligations; (3) that Wal-Mart failed to fulfill its obligations; and (4) that damages resulted from this failure. *J.J.O. Construction, Inc. v. Baljak*, No. 06AP-1300, 2007 WL 2309741 at \*2 (Ohio Ct. App. Aug. 14, 2007). When the relevant facts are undisputed, whether they constitute a breach of contract is a question of law for the court to decide. *Id.*

**1.    The Contract Documents Specified a Lump Sum Bid for All Unclassified Excavation**

Wal-Mart argues that the Contract Documents are plain and unambiguous. The Contract Documents, according to Wal-Mart, unambiguously specified a lump sum bid for all unclassified excavation including the rock excavation at issue here. Thomas & Marker does not dispute the lump sum nature of the Contract Documents but argues that the definition of "rock excavation" in the Contract Documents is ambiguous which permits the trier of fact to consider extrinsic evidence. Extrinsic evidence must be construed against Wal-Mart, the drafter of the contract.

Unless fraud or other unlawfulness is involved, a clear and unambiguous contract is to be enforced by the court. *Dugan & Meyers Construction Co. v. Ohio Department of Administrative Services*, 864 N.E.2d 68, 73 (Ohio 2007). A determination of whether a contract is ambiguous is made as a matter of law by the court. *Arrow Group Industries v. MGD Manufacturing, LLC*, No. C-3-06-304, 2007 WL 3227071 at *7 (S.D. Ohio Oct. 29, 2007)(citing *Lemely v. Ford Motor Co.*, 1994 WL 483901 at *4 (6th Cir. Sept. 7, 1994)). "When the contract language is ambiguous, interpretation is done by the finder of fact who may consider extrinsic or parol evidence." *Id.*

"A contract is ambiguous when a term cannot be determined from the 'four corners of the agreement' or where contract language is susceptible to two or more reasonable interpretations." *Id.* A contract is also ambiguous where it is of such doubtful meaning that reasonable minds could disagree as to its meaning. *Beverly v. Parilla*, 848 N.E.2d 881,886 (Ohio Ct. App. 2006). However, a plain and unambiguous contract does not become ambiguous simply because its operation will work a hardship upon one of the parties thereto and a corresponding advantage to the other. *Dugan & Meyers*, 864 N.E.2d at 73.

When interpreting a contract, common words are to be given their ordinary meaning

-20-

unless manifest absurdity results, or unless some other meaning is clearly evidenced from the four corners of the contract. *Foster Wheeler Enviresponse, Inc. v. Franklin County Convention Facilities Authority*, 678 N.E.2d 519, 526 (Ohio 1997). Technical terms are to be given their technical meaning unless a different intention is clearly expressed. *Id.* Finally, writings executed as a part of the same transaction are to be read as a whole and the intent of each part is to be determined from a consideration of the whole. *Id.*

The language at issue is found in the Supplementary Conditions. Section 4.3.4.1 provides that, "'Rock Excavation' is described as igneous, metamorphic or sedimentary rock that cannot be removed by rippers or other mechanical methods and, therefore, requires drilling and blasting."

Thomas & Marker first argues that this definition of rock excavation is ambiguous because the purportedly compensable method of rock removal by drilling is also a mechanical means. A drill, according to Thomas & Marker, is a mechanical method for the removal of rock. Further, the reference to "therefore" in the definition implies a mutually exclusive relationship between the terms "mechanical means" and "drilling" and there is no such mutually exclusive relationship according to any reasonable interpretation of these two terms. Finally, according to Thomas & Marker, blasting is also a mechanical means because blasting materials and blasting equipment are often interconnected and blasting equipment is essentially mechanical.

The definition of rock excavation is not ambiguous because drilling and blasting are arguably mechanical means. The definition of rock excavation excludes certain mechanical methods of rock removal. However, rock excavation includes only rock that is removed by drilling and blasting. It makes no difference as to whether the drilling and blasting are

-21-

mechanical means.

Thomas & Marker next argues that the definition of rock excavation is ambiguous because the Soil Borings Report states that a ram hoe, arguably a mechanical device, can be used to excavate bedrock. Using a ram hoe to excavate bedrock does not render the definition of "rock excavation" ambiguous. Again, rock excavation includes only rock that is removed by drilling and blasting, and ram hoe excavation is not drilling and blasting.

Finally, Thomas & Marker argues that the definition of rock excavation is ambiguous because the interpretation of rock excavation as excavation requiring drilling and blasting would result in multiple absurdities. First, drilling and/or blasting are normally recommended to be performed prior to the mass grading which would reveal the existence of unforseen rock. Second, drilling and blasting are not normally utilized subsequent to commencing excavation and cannot be performed within or near the constructed portion of any building without damage to the building. Third, drilling and blasting cannot be used to excavate a utility trench within a building or near utilities in place. Fourth, the use of drilling and blasting is generally prohibited in urban/populated areas.[3]

_____

[3]These "multiple absurdities" are identified in the Affidavit of Daniel G. Longo ("Longo") dated November 21, 2007. Wal-Mart argues that the portions of Longo's Affidavit that offer expert opinions should be struck because Longo was not identified as an expert witness. Thomas & Marker concedes that portions of Longo's Affidavit offer expert opinions but that Longo was identified as an expert because he was identified as a lay witness and he was never specifically retained as an expert witness by Thomas & Marker.

Fed. R. Civ. P. 26(a)(2) and the Local Rules require the timely identification of expert witnesses and the timely disclosure of expert reports. Longo was not timely identified as an expert and he did not timely provide an expert report.

Thomas & Marker also argues that Longo's Affidavit should be considered because any alleged failure to disclose Longo as an expert is harmless. The alleged failure is harmless because Wal-Mart was aware of Longo's affidavit testimony "at the earliest stages of this litigation" and Wal-Mart deposed Longo concerning the affidavits. However, Longo had been

As indicated in the footnote, the "multiple absurdities" are identified as expert opinions by Daniel G. Longo ("Longo"). However, Longo's expert opinions have been struck.

Even if the "multiple absurdities" were not struck, they would not render the definition of rock excavation absurd and thus ambiguous. The definition of rock excavation says nothing about when and where the rock excavation is to be performed. It merely defines rock excavation as the excavation of rock by drilling and blasting.

In sum the definition of rock excavation in the Supplementary Conditions is not ambiguous. This definition of rock excavation can be determined from the Contract Documents, is not susceptible of two or more meanings and does not result in a manifest absurdity.

Thomas & Marker has not presented evidence that the Contract Documents or any portion thereof are ambiguous. Further, it is undisputed that no drilling or blasting ever occurred on the site and thus there was no rock excavation that satisfied contract terms unless these contract terms were waived by Wal-Mart. (Deposition of Rodney Trimbach ("Trimbach Dep.") 102 Sept. 19, 2007.)

The Contract Documents specify a lump sum bid for all unclassified excavation unless there is work that constitutes an "unforseen condition." Therefore, Thomas & Marker is entitled to only the amount of their lump sum bid for all unclassified excavation unless there are unforseen conditions or unless Wal-Mart has waived the definition of rock excavation found in the Contract Documents.

---

identified only as a lay witness at the time. Therefore, Longo's expert opinions will be struck.

Thomas & Marker concludes that any dispute concerning Longo's Affidavit is without consequence as Longo's opinions are redundant to those expressed by C. K. Satyapriaya, Thomas & Marker's retained expert witness. The Court has been given no reason to exclude any expert opinions given by C. K. Satyapriaya.

2.     **The Contract Documents Required Thomas & Marker To Perform Its Own Site Investigation and Expressly Disclaimed the Soil Report**

Wal-Mart next argues that the Contract Documents required Thomas & Marker to perform its own site investigation and expressly disclaimed the Soil Report. Further, no investigation or evaluation of the site conditions was ever undertaken by Thomas & Marker or by anyone acting on Thomas & Marker's behalf prior to the submission of Thomas & Marker's lump sum bid. (Pequignot Dep. 29.)

Thomas & Marker responds that standard business practice does not include drilling any type of soil borings prior to bidding a project when a geotechnical report containing soil boring test results is furnished by the owner. Thomas & Marker also argues that it could not perform such borings because Wal-Mart did not own the Project site until after the June 6, 2005, deadline for submitting bids.

The Contract Documents discuss the Soil Borings Report in several sections:

All quantities shall be determined by the Contractor [Thomas & Marker] in preparation of a lump sum bid. (Soil report data are not considered all conclusive and it is the Contractor's responsibility to further investigate conditions as it deems necessary. (Special Condition Sections 15.A.1., 15.B.1., 15.C.1. and 15.D.1.)

The following is a list of documents that the Contractor [Thomas & Marker] should receive and review in preparation of a Bid Proposal.… Geotechnical Report prepared by TesTech, Inc. dated August 13, 2004 and issued by CESO, Inc. (The TesTech report is provided for information only and is not considered a design specification.) (Special Conditions Section 7.)

A soil investigation report has been made for this Project and a log of borings has been prepared. The report and log were obtained for use by the Architect/Engineer in design and are not a part of the Contract Documents. The soil investigation report and log of borings are being furnished to the Contractor as general information only, and are not, and shall not be deemed to constitute, a representation or warranty of subsurface conditions. Neither the owner or Architect/Engineer assume responsibility for the accuracy or completeness of this

report or the log of borings. (Supplementary Conditions Section 2.2.3.1.)

The Contractor [Thomas & Marker] shall thoroughly examine all factors, reasonably available to it, including but not limited to the Drawings, Specifications, soils report, site boundary and topography, site conditions, site history, local information, and seasonal weather conditions in the preparation of the Contract Sum. Soil report data shall not be deemed to be accurate or complete, and it is the Contractor's responsibility to further investigate site conditions as it determines necessary…. (Supplementary Conditions Section 1.5.2.)

The Contractor [Thomas & Marker] shall be responsible for determining the conditions of the existing site, including all existing improvements, paving, utilities, and construction, and shall have accounted for such conditions in the preparation of its bid and shall not be entitled to additional compensation as the result of not being familiar with the existing site conditions. If Contractor encounters Unforseen Conditions, Contractor may submit a PCOB to Owner in accordance with Section 3.3 of the Contract. (Supplementary Conditions Section 3.2.1.2.)

While standard business practice may not include drilling any type of soil borings prior to bidding a project when a geotechnical report containing soil boring test results is furnished by the owner, the Contract Documents for this Project are clear and unambiguous. Thomas & Marker was not entitled to rely upon the Soil Borings Report. Further, Thomas & Marker agreed to be responsible for determining the conditions of the existing site.

Thomas & Marker also argues that it could not perform soil borings because Wal-Mart did not own the Project site until after the June 6, 2005 bid deadline. This, of course is an issue that should have been raised by Thomas & Marker before it entered into the Contract Documents. Once entered into and absent waiver, intentions not expressed in the written documents are deemed to not exist. *See Aultman Hospital Association v. Community Mutual Insurance Co.*, 544 N.E.2d 920, 923 (Ohio 1989).

Caselaw also offers support for Wal-Mart's argument that it is not liable for subsurface reports that it specifically disclaims in the Contract Documents. In *S & M Constructors v. City of*

-25-

*Columbus*, the Ohio Supreme Court determined that S & M Constructors could not recover from the City of Columbus based upon faulty subsurface reports when the City of Columbus specifically disclaimed liability for conditions that differed from those in the subsurface reports. 434 N.E.2d 1349 (Ohio 1982). Therefore, the Contract Documents require Thomas & Marker to perform its own site investigation and expressly disclaim the Soil Borings Report.

**3.      The Subsurface Rock At the Project Site Was Not an "Unforseen Condition"**

Wal-Mart next argues that the subsurface rock encountered at the Project was not an "unforseen condition" as defined in the Contract Documents. Thomas & Marker responds with argument that the rock was an "unforeseen condition" as defined in the Contract Documents.

The Contract Documents clearly and unambiguously state that all excavation is to be considered "unclassified" and should be included as part of the lump sum base bid unless it constitutes an "unforsen condition." Further, the Contract Documents provide that , to demonstrate the right to request a Change Order regarding rock excavation, Thomas & Marker must show that the excavation was "rock excavation" and that such excavation was not indicated in the TesTech Report and that the excavation was due to Thomas & Marker encountering an "unforeseen condition." Therefore, the only excavation that may be subject to reimbursement over and above the lump sum contract price is "rock excavation." (Supplementary Conditions Section 4.3.4.)

Thomas & Marker agrees that, for its claim regarding the removal of rock from the Project to be successful, it must qualify as both "rock excavation" and as an "unforeseen condition" under the terms of the Contract Documents. (Thomas & Marker's Memorandum In Opposition 13.) Since, as determined above, Thomas & Marker's claim regarding the removal of

rock does not qualify as "rock excavation" under the terms of the Contract Documents, the Court need not and does not address whether, absent waiver, the removal of rock by Thomas & Marker is an "unforseen condition" as defined in the Contract Documents.

**4.      Thomas & Marker Failed To Follow the Required Procedures for Providing Notice of Unforseen Conditions and Submitting Change Orders**

Wal-Mart's final argument regarding Thomas & Marker's breach-of-contract claim is that, assuming that Thomas & Marker is entitled to additional compensation for the rock excavation, Thomas & Marker failed to follow the procedures mandated by the Contract Documents for submitting change orders for approval.

A PCOB must be submitted within seven (7) days of discovery of the unforeseen condition and a Change Order must be submitted within thirty (30) days after issuance of the PCOB. (Construction Agreement Section 3.3.) According to Wal-Mart, the unforeseen rock was discovered sometime in late July or early August and the first PCOB for the rock excavation was submitted to Wal-Mart on September 23, 2005. This PCOB was signed by a Wal-Mart representative on September 30, 2005, but the proposed Change Order was not submitted by Thomas & Marker until December 21, 2005.

Thomas & Marker does not address the timeliness of its submission of the PCOB other than to assert that it promptly notified Wal-Mart of the unforeseen rock excavation. It does, however, respond that Wal-Mart waived the thirty-day requirement for submission of the Change Order.

As with the determination regarding whether the rock excavation was an "unforeseen condition," the Court need not and does not address whether the submissions of the PCOB and Changer Order by Thomas & Marker were timely in accordance with the Contract Documents.

The only excavation that may be subject to reimbursement over and above the lump sum contract price is "rock excavation" and Thomas & Marker has not shown that it engaged in "rock excavation" in accordance with the Contract Documents.

**5.      Wal-Mart Waived any Contractual Defense to Thomas & Marker's Entitlement To Compensation for Unforeseen Rock**

Thomas & Marker argues that Wal-Mart has waived any contractual defenses to Thomas & Marker's entitlement to compensation for unforeseen rock. Wal-Mart responds that there has been no waiver by virtue of any of Wal-Mart's actions.

Waiver is defined by the Ohio Supreme Court as "a voluntary relinquishment of a known right." *List & Son Co. v. Chase*, 88 N.E. 120, 122 (Ohio 1909). A waiver may be made by express words or by conduct which makes performance by the other party impossible or which seems to dispense with complete performance at a time when complete performance might be achieved. *Id.* An implied wavier may arise when the claimant had been prejudicially "misled or lulled" into believing that strict compliance is not required. *Sandler v. AII Acquisition Corporation, Inc.*, 954 F.2d 382, 385 (6th Cir. 1992).

The Court is responsible for determining if there is evidence from which a waiver could be found. *State Automobile Mutual Insurance Association v. Lind*, 172 N.E. 361, 364 (Ohio 1930). If so, the finder of fact then must determine whether there had been a waiver. *Id.*

Stipulations in written contracts may be waived by the parties. *Zanesville Glass Supply, Inc. v. Goff*, No. CT2007-0026, 2008 WL 732646 at *4 (Ohio Ct. App. Mar. 10, 2008).  For example, the enforcement of a provision of a construction agreement requiring written amendments to the agreement may be waived when changes are made, the necessity for which develops as the work progresses, and the parties are intent on completing the building project.

-28-

*Sematic USA, Inc. v. Otis Elevator Company*, No. 04 CV 2400, 2006 U.S. Dist. LEXIS 36817 at

*31 (N.D. Ohio June 6, 2006). Said another way, where a construction contract stipulates that

extra work must be ordered in writing, the stipulation is binding and no recovery can be had for

such work without a written agreement unless waived by the owner. *Seneca Valley, Inc. v.

Village of Caldwell*, 808 N.E.2d 422, 427 (Ohio Ct. App. 2004). Proof of such waivers must be

either in writing or by clear and convincing evidence. *Zanesville Glass*, 2008 WL 732646 at *4.

In this case, Thomas & Marker argues that Wal-Mart waived the contractual definition of

rock excavation, the contractual requirement that the rock excavation performed by Thomas &

Marker be an unforseen condition and the contractual requirement that a PCOB be submitted

within seven (7) days of discovery of the unforseen condition. Wal-Mart waived these

contractual requirements when it accepted Change Order No. 008 related to the excavation of

bedrock in the location of certain footings[4], when its construction managers acknowledge the

inaccuracies in the soil borings report and instructed Thomas & Marker to keep track of its costs

associated with the rock removal (Pequignot Dep. 69; Hughes Dep. 59) and when it later

approved the PCOB for the rock excavation. Thomas & Marker also identifies evidence that

Wal-Mart waived the contractual requirement that a Change Order be submitted within thirty

(30) days of PCOB approval regarding Change Order 4.0 by never rejecting Change Order No.

4.0 due to untimely submission and by continuing to seek additional information regarding

Change Order 4.0.

Wal-Mart responds that, under Ohio law, waiver must be established by "clear and

---

[4]Wal-Mart's authorization of Change Order 008 states: "change required for unforeseen
site conditions… due to rock conditions in areas unexpected."

convincing evidence" and Thomas & Marker has not done so. Wal-Mart also responds that the Construction Agreement clearly sets forth that there can be no waiver unless made in writing and cites two cases for the proposition that this "no waiver" clause is enforceable. *See Joel Lehmkuhl Excavating v. City of Troy, Ohio*, No. 2004-CA-31, 2005 WL 994607 at *5 (Ohio Ct. App. Apr. 29, 2005); *George S. Hofmeister Family Trust v. FGH Industries, LLC*, 2007 WL 2984188 at *5-6 (E.D. Mich. Oct. 12, 2007).

There is evidence from which a fact finder could conclude that Wal-Mart waived the contractual provisions regarding the definition of rock excavation, the definition of an unforseen condition and the requirement that a PCOB be submitted within seven (7) days of discovery of the unforeseen condition. There is evidence that Wal-Mart's representatives recognized that there was rock on the site that was not shown on the soil borings report and that there may be additional costs associated with the removal of this rock. Wal-Mart approved Change Order 008 which was for unforseen site conditions due to rock conditions in area unexpected. Wal-Mart also later approved a PCOB for additional rock excavation, a PCOB which was not submitted within the time frame required by the Contract Documents. Finally, rather than immediately rejecting Change Order 4 because there was no rock excavation or because the rock excavation was not an unforeseen condition, or because it was not timely submitted, Wal-Mart representatives continued to debate the quantities involved and the work required to remove the rock.

As for the "no waiver" clause in the Construction Agreement, both of the cases cited by Wal-Mart indicate that a "no waiver" clause is enforceable unless the writing requirement is waived. In this case, there is evidence from which a fact finder could conclude that Wal-Mart

waived certain relevant portions of the Contract Documents by its affirmative actions.

**6.     Conclusion**

Wal-Mart has shown that the work in dispute does not meet the contractual definition of "rock excavation." However, Thomas & Marker has identified evidence from which a reasonable fact finder could conclude that Wal-Mart waived this and other written conditions regarding reimbursement for removal of the rock that is the subject of this dispute.

Therefore, there are genuine issues of material fact and Wal-Mart is not entitled to judgment as a matter of law on Thomas & Marker's First Claim for Relief for breach of contract regarding expenses incurred in connection with the rock excavation. Wal-Mart does not seek summary judgment nor do the Parties provide argument regarding Thomas & Marker's breach-of-contract claim regarding the retainage and Change Orders Nos. 032, 034 and 027.

**B.     Second Claim for Relief for Breach of Implied Warranty of Suitability of Plans, Specifications and Geotechnical Reports**

Thomas & Marker's Second Claim for Relief alleges that Wal-Mart impliedly warranted the suitability of the plans, specifications and geotechnical reports. Thomas & Marker's encountering of rock at elevations at shallower depths than shown on the plans, specifications and geotechnical report and the location of a water line running through a storm sewer are allegedly breaches of this implied warranty.

Wal-Mart argues that there is no cause of action in Ohio against an owner for breach of implied warranty of the accuracy of plans. Furthermore, the Contract Documents specifically disclaim the accuracy and/or completeness of the TesTech Report and, according to Wal-Mart, the contract terms clearly state that it is the obligation of Thomas & Marker to make sure that the water line did not conflict with any other utilities.

Thomas & Marker responds that an owner impliedly warrants the accuracy of its affirmative indications regarding job site conditions and a contractor is entitled to compensation for its damages due to a breach of this implied warranty. In other words, when information is obviously intended to be used by bidding contractors in formulating their bids, the implied warranty of job site conditions will prevail over express contract clauses which disclaim any responsibility for the accuracy of information provided to contractors and which require contractors to examine the site and check the plans.

The success of this claim rests on Ohio's application of the *Spearin* Doctrine. In *United States v. Spearin*, 248 U.S. 132 (1918), the Supreme Court recognized that when a contractor is "bound to build according to plans and specifications prepared by the owner, the contractor will not be responsible for the consequences of defects in the plans and specifications." *Dugan & Meyers*, 864 N.E.2d at 73 (Ohio 2007)(quoting *Spearin*, 248 U.S. at 136).

*Spearin* was a case involving contract specifications prepared by the Government. *Spearin*, 248 U.S. at 133. In setting forth the *Spearin* doctrine, the Supreme Court relied upon reasoning it had used in other cases involving government specifications. *Id.* at 136.

 The Ohio Supreme Court recognized the *Spearin* doctrine in *Dugan & Meyers*. It said the "*Spearin* doctrine holds that, in cases involving government contracts, the government impliedly warrants that accuracy of its affirmative indications regarding job site conditions." *Dugan & Meyers*, 864 N.E.2d at 73 (quoting *Sherman R. Smoot Co. of Ohio v. Ohio Department of Administrative Services*, 736 N.E.2d 69 (Ohio Ct. App. 2000)). However, no Ohio court has found that the *Spearin* doctrine applies to cases that do not involve government specifications.

Thomas & Marker responds that the *Spearin* doctrine applies to contracts between private

parties in Ohio. However, all of the cases cited by Thomas & Marker in support of this argument involved government contract specifications and are not contract disputes between private parties. *See Trucco Construction Company, Inc. v. City of Columbus*, No. 05AP-1134, 2006 WL 3825262 (Ohio Ct. App. Dec. 29, 2006)(contract specifications issued by City of Columbus); *Sherman R. Smoot*, 736 N.E.2d 69 (contract specifications issued by State of Ohio); *Central Ohio Joint Vocational School District Board of Education v. Peterson Construction Company*, 716 N.E.2d 1210 (Ohio Ct. App. 1998)(contract specifications issued by board of education); *Condon-Cunningham, Inc. v. Day*, 258 N.E.2d 264 (Cuyahoga County, Ohio Ohio Ct. Com. Pl. 1969)(contract specifications issued by Board of County Commissioners).

Further, although not a breach-of-contract case, one Ohio Appeals Court has determined that there is no implied warranty of the accuracy of plans. *Lattea v. City of Akron*, 458 N.E.2d 868, 874 (Ohio Ct. App. 1982). The *Lattea* court found that, at the time there was no decision by an Ohio court creating such an implied warranty and that there is no basis for such an implied warranty. *Id.*

In deciding whether the *Spearin* doctrine applies to this case between private entities and governed by the laws of Ohio, this Court must apply the substantive law of Ohio as set forth by the Ohio Supreme Court. If the Ohio Supreme Court has not directly addressed the issue, this Court must determine what the Ohio Supreme Court would decide if faced with the issue and should not disregard a decision of an Ohio appellate court on point.

In this case, the Ohio Supreme Court has not directly determined that the *Spearin* doctrine applies to contracts between private parties. However, the *Spearin* doctrine grew out of a case involving contract specifications prepared by a government entity and the reasoning used

to set forth the *Spearin* doctrine is based upon cases involving contract specifications prepared by a government entity. Further, Ohio courts, including the Ohio Supreme Court, have applied the *Spearin* doctrine only to cases involving contract specifications prepared by government entities. Finally, an Ohio appellate court has determined that there is no implied warranty of the correctness of plans.

Therefore, this Court finds no basis for extending the *Spearin* doctrine to include cases involving private entities and elects to not do so. The *Spearin* doctrine does not provide an implied warranty for defects in plans and specifications in this contract action between Wal-Mart and Thomas & Marker, both private entities.

If the *Spearin* doctrine were applicable, which it is not, Thomas & Marker's breach-of-implied-warranty claim would still fail. The *Spearin* doctrine provides that an implied warranty of specification is not overcome by "general clauses" requiring a contractor to visit a site, to review plans and to inform themselves of the requirements of the work. *Spearin*, 248 U.S. at 136. However, Ohio courts have found that the *Spearin* doctrine does not overcome "express and specific" contract provisions. *Dugan & Meyers*, 864 N.E.2d at 73. In doing so, the Ohio Supreme Court quoted *Spearin*: "Where one agrees to do, for a fixed sum, a thing possible to be performed, he will not be excused or become entitled to additional compensation, because unforeseen difficulties are encountered." *Id.* (quoting *Spearin*, 248 U.S. at 136).

In this case, the Contract Documents include the type of general clauses referred to in *Spearin*. The Contract Documents inform Thomas & Marker that it is Thomas & Marker's obligation to perform their own site investigation. The Contract Documents also require Thomas & Marker to review the plans. In their bid, Thomas & Marker represented to Wal-Mart that

Thomas & Marker had examined the site and was familiar with all conditions surrounding the proposed Project.

However, the Contract Documents also include very specific requirements, particularly with regard to the subsurface soil conditions that are at issue here. The Contract Documents expressly disclaim the accuracy and completeness of the TesTech Report. For example: the Contract Documents indicate that the soil report data "shall not be deemed to be accurate or complete and it is the Contractor's responsibility to further investigate site conditions; indicate that the soil investigation report and log of borings are not, and shall not be deemed to constitute, a representation or warranty of subsurface conditions; indicate that the soil report data is not considered all conclusive and it is the Contractor's responsibility to further investigate conditions as it deems necessary; and indicate that the TesTech Report is provided for information only and is not considered a design specification.

Therefore, while the *Spearin* doctrine, if applied, might overcome the "general clauses" in the Contract Documents, it does not overcome the specific clauses. If the *Spearin* doctrine were applicable, Thomas & Marker's claim for breach of an implied warranty of suitability of plans, specifications and geotechnical reports would still fail.

There are no genuine issues of material fact and Wal-Mart is entitled to judgment as a matter of law on Thomas & Marker's Second Claim for Relief. Thomas & Marker's Second Claim for Relief for breach of an implied warranty of suitability of plans, specifications and geotechnical reports is DISMISSED.

**C.    Third Claim for Relief for Breach of Implied Warranty of Accuracy of Plans, Specifications and Geotechnical Reports**

Thomas & Marker's Third Claim for Relief alleges that Wal-Mart impliedly warranted

the accuracy of the plans, specifications and geotechnical reports. Thomas & Marker's encountering of rock at elevations at shallower depths that shown on the plans, specifications and geotechnical reports and the location of a water line running through a storm sewer is a breach of this alleged implied warranty.

Thomas & Marker's Second Claim for Relief asserts an implied warranty of <u>suitability</u> of various contract documents and its Third Claim for Relief asserts and implied warranty of <u>accuracy</u> of those same contract documents. Further, the arguments presented by both Parties regarding this Third Claim for Relief are the same as the arguments offered on the Second Claim for Relief. Essentially, Thomas & Marker argues that the *Spearin* doctrine provides an implied warranty in this situation and Wal-Mart argues that it does not.

Since the arguments are the same, the results are the same. Just as it does not provide an implied warranty for the <u>suitability</u> of plans, specifications and geotechnical reports, the *Spearin* doctrine does not provide an implied warranty for the <u>accuracy</u> of plans, specifications and geotechnical reports.

There are no genuine issues of material fact and Wal-Mart is entitled to judgment as a matter of law on Thomas & Marker's Third Claim for Relief. Thomas & Marker's Third Claim for Relief for breach of an implied warranty of accuracy of plans, specifications and geotechnical reports is DISMISSED.

**D.     Fourth Claim for Relief for Unjust Enrichment**

Thomas & Marker's Fourth Claim for Relief alleges that Wal-Mart has been unjustly enriched because Wal-Mart has not paid Thomas & Marker for the reasonable value of the labor, services and materials that Thomas & Marker has provided to Wal-Mart relative to the rock

excavation and other Change Orders. Wal-Mart argues that Thomas & Marker's unjust enrichment claim fails as a matter of law.

Absent fraud, illegality or bad faith, a party to an express agreement may not bring a claim for unjust enrichment when the express agreement contains provisions governing the alleged inequitable conduct of the other party. *See Aultman Hospital Association*, 544 N.E.2d at 924; *Weiper v. W.A. Hill & Associates*, 661 N.E.2d 796, 804 (Ohio Ct. App. 1995). To this, both parties agree.

However, Thomas & Marker argues that Wal-Mart has exhibited bad faith in this matter. Yet, there are no allegations of bad faith in Thomas & Marker's Fourth Claim for Relief.

Once a case, has reached the summary judgment stage, such as this one, the liberal pleading standards are not applicable. *Tucker v. Union of Needletrades, Industrial and Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005). Any new claims must be brought by amending the complaint. *Id.*

Thomas & Marker has elected to not amend its complaint and has brought new allegations at the summary judgment stages. Therefore, these new allegations of bad faith may not be considered.

If, however, Thomas & Marker's new allegations of bad faith were to be considered, they would be without merit. The bad faith was exhibited, according to Wal-Mart when its representative offered to settle the rock excavation claim for $748,710.47 and when its representatives were invited and encouraged to participate in a meeting in Bentonville, Arkansas to discuss settlement of the claim.

Federal Rule of Evidence 408 provides that offers to settle and statements made in

compromise negotiations regarding a claim are not admissible when offered to prove liability for, invalidity of or amount of a disputed claim. *See Bridgeport Music, Inc. v. Justin Combs Publishing*, 507 F.3d 470, 480 (6th Cir. 2007). In this case, Thomas & Marker's bad faith evidence is evidence of an offer to settle and evidence of statements made in compromise negotiations. Therefore, the bad-faith evidence that Thomas & Marker has identified is not admissible and may not be considered for purposes of this Motion for Partial Summary Judgment.

Alternatively, Thomas & Marker argues that its unjust enrichment claim survives as it relates to Defendant Wal-Mart Real Estate Business Trust who was not a signatory to the Contract Documents. However, Thomas & Marker has not made an unjust enrichment claim against Wal-Mart Real Estate Business Trust.

Thomas & Marker's new allegations of bad faith may not be considered at the summary judgment stage. If they were, however, they would fail. The Contract Documents contain provisions governing Wal-Mart's alleged inequitable conduct. Further, Thomas & Marker has not identified admissible evidence showing bad faith on the part of Wal-Mart and has not brought an unjust enrichment claim against Wal-Mart Real Estate Business Trust.

Therefore, there are no genuine issues of material fact and Wal-Mart is entitled to judgment as a matter of law on Thomas & Marker's Fourth Claim for Relief. Thomas & Marker's Fourth Claim for Relief for unjust enrichment is DISMISSED.

**E.     Fifth Claim for Relief for Promissory/Equitable Estoppel**

Thomas & Marker's Fifth Claim for Relief alleges that Wal-Mart should be equitably estopped from denying Thomas & Marker's equitable entitlement to payment for all costs

incurred to perform the rock excavation and other Change Orders. Wal-Mart allegedly explicitly and impliedly promised Thomas & Marker that Thomas & Marker would be compensated for this work and Thomas & Marker has not yet been compensated by Wal-Mart. Wal-Mart responds that Thomas & Marker's promissory/equitable estoppel claim fails as a matter of law.

As an initial matter, promissory estoppel and not equitable estoppel is used to create a cause of action. *Holt Company of Ohio v. Ohio Machinery Co.*, No. 06AP-911, 2007 WL 3027084 at *5 (Ohio Ct. App. Oct. 18, 2007). Equitable estoppel is used to bar a party from raising a defense or objection or from instituting an action which it is otherwise entitled to institute. *Id.* Therefore, Thomas & Marker's Fifth Claim for Relief, a cause of action brought by Thomas & Marker, will only be addressed as a promissory estoppel claim.

Thomas & Marker argues that Wal-Mart has exhibited bad faith in this matter. Yet, as with Thomas & Marker's Fourth Claim for Relief, there are no allegations of bad faith in Thomas & Marker's Fifth Claim for Relief.

Thomas & Marker has elected to not amend its complaint and has brought new allegations at the summary judgment stage. Therefore, these new allegations of bad faith may not be considered. If they were to be considered, Thomas & Marker's promissory estoppel claim would still fail.

The elements of a promissory estoppel claim in Ohio are: (1) a clear and unambiguous promise; (2) reliance on the promise by the person to whom the promise is made; (3) the reliance is reasonable and foreseeable; and (4) the person claiming reliance is injured as a result of reliance on the promise. *Holt*, 2007 WL 3027084 at *6 (citing *Patrick v. Painesville Commercial Properties, Inc.*, 704 N.E.2d 1249, 1254 (Ohio Ct. App. 1997)). Further, promissory estoppel is

not available as a remedy where the legal relationship between the parties is governed by a valid and enforceable contract. *Harwood v. Avaya Corp.*, 2007 U.S. Dist. LEXIS 38722 at *33 (S.D. Ohio May 25, 2007).

In this case, there is a valid and enforceable contract. However, Thomas & Marker argues, as it did regarding its unjust enrichment claim, that Wal-Mart exhibited bad faith with regard to Thomas & Marker's rock excavation claim. However, as with the unjust enrichment claim, the only evidence of bad faith identified by Thomas & Marker is inadmissible.

Thomas & Marker's new allegations of bad faith regarding its promissory estoppel claim may not be considered at the summary judgment stage and Thomas & Marker has not identified other evidence regarding a promissory estoppel. Therefore, there are no genuine issues of material fact and Wal-Mart is entitled to judgment as a matter of law on Thomas & Marker's Fifth Claim for Relief. Thomas & Marker's Fifth Claim for Relief for promissory/equitable estoppel is DISMISSED.

**F.     Sixth Claim for Relief for Breach of Implied Duty of Good Faith and Fair Dealing**

Thomas & Marker's Sixth Claim for Relief alleges that Wal-Mart breached the duty of good faith and fair dealing by failing to evaluate and consider Change Order No. 4.0 and subsequent revisions. In addition to not fairly evaluating this change order, Wal-Mart caused Thomas & Marker to incur additional costs when Thomas & Marker officials were told, at a meeting in Bentonville, Arkansas, without meaningful explanation or reasoning, that the request for Change Order No. 4.0 and subsequent revisions would not be paid and one Wal-Mart official denied knowledge of Wal-Mart's offer to settle the dispute. Wal-Mart responds that Thomas & Marker's claim for breach of implied duty of good faith and fair dealing is not a separate cause

of action and should be dismissed.

Every contract has an implied duty of good faith and fair dealing. *Littlejohn v. Parrish*, 839 N.E.2d 49, 54 (Ohio Ct. App. 2005). However, a party does not have a separate cause of action for breach of an implied duty of good faith and fair dealing where a contract exists that governs the relationship between the parties. *Littlejohn*, 839 N.E.2d at 54; *Lakota Local School District Board of Education v. Brickner*, 671 N.E.2d 578, 584 (Ohio Ct. App. 1996).

"The duty of good faith refers to an implied covenant not to take opportunistic advantage in a way that could not have been contemplated at the time of contract drafting." *B-Right Trucking Company v. Interstate Plaza Consulting*, 798 N.E.2d 29, 37 (Ohio Ct. App. 2003)(citing *Ed Schory & Sons, Inc. v. Society National Bank*, 662 N.E.2d 1074 (Ohio 1996)). Thus, what the duty of good faith consists of depends upon the language of the contract which leads to an evaluation of reasonable expectations of the parties. *Id.*

In this case, there is a contract that governs the relationship between the parties. Therefore, Thomas & Marker does not have a separate cause of action for breach of the implied duty of good faith and fair dealing. Further, as determined above, Thomas & Marker's breach-of-contract claim remains to be adjudicated and the basis upon which it remains to be adjudicated relates to Wal-Mart's actions regarding some of the same issues raised in Thomas & Marker's claim for breach of the implied duty of good faith and fair dealing.

There are no genuine issues of material fact and Wal-Mart is entitled to judgment as a matter of law on Thomas & Marker's Sixth Claim for Relief. Thomas & Marker's Sixth Claim for Relief for breach of the implied duty of good faith and fair dealing is DISMISSED.

**G.     Ninth Claim for Relief for Fraud In the Inducement**

-41-

Thomas & Marker's Ninth Claim for Relief alleges that Wal-Mart committed fraud in the inducement when Wal-Mart invited and encouraged Thomas & Marker officials to travel to Wal-Mart's corporate headquarters in Bentonville, Arkansas. Wal-Mart allegedly misrepresented or omitted material facts when it extended this offer with no intent to negotiate the dispute.

Wal-Mart argues that Thomas & Marker's fraud claim fails as a matter of law because Thomas & Marker cannot prove the essential elements of this claim. Thomas & Marker responds that, while there is no settlement agreement, its First Amended Complaint specifically sets forth all of the elements of a claim for fraud.

"A claim of fraud in the inducement arises when a party is induced to enter into an agreement through fraud or misrepresentation." *ABM Farms, Inc. v. Woods*, 692 N.E.2d 574, 578 (Ohio 1998). To prove fraud in the inducement, Thomas & Marker must show that Wal-Mart made a knowing, material misrepresentation with the intent of inducing Thomas & Marker's reliance and that Thomas & Marker relied upon that misrepresentation to its detriment. *Id.* (citing *Beer v. Griffith*, 399 N.E.2d 1227, 1231 (Ohio 1980)).

In this case, there was no settlement agreement. Therefore, Thomas & Marker cannot be heard to say that Wal-Mart fraudulently induced Thomas & Marker to enter into an agreement.

Thomas & Marker argues that, while the absence of a settlement agreement precludes a claim for fraud in the inducement, its First Amended Complaint specifically sets forth all the elements of a claim of fraud. Thomas & Marker argues that changing its claim from fraud-in-the-inducement to fraud is permitted by the liberal rules of pleading. However, once a case has progressed to the summary judgment stage, the liberal pleading standards are inapplicable. *Tucker*, 407 F.3d at 788. Further, Thomas & Marker's First Amended Complaint does not

identify a fraud claim beyond its fraud-in-the-inducement claim.

Therefore, there are no genuine issues of material fact and Wal-Mart is entitled to judgment as a matter of law on Thomas & Marker's Ninth Claim for Relief. Thomas & Marker's Ninth Claim for Relief for fraud in the inducement is DISMISSED.

In its Ninth Claim for Relief, Thomas & Marker also argues that it is entitled to punitive damages in connection with Wal-Mart's malicious conduct associated with the fraud-in-the-inducement claim. However, since Thomas & Marker's fraud-in-the-inducement claim has been dismissed, it is not entitled to the punitive damages associated therewith.

## V.    SUMMARY

Wal-Mart's Motion for Summary Judgment on Thomas & Marker's First Claim for Relief for breach of contract is OVERRULED. While Thomas & Marker has not shown that Wal-Mart breached the specific terms of the Contract Documents, it has identified evidence from which a reasonable finder-of-fact could conclude that Wal-Mart waived the terms of those Contract Documents with regard to the rock excavation that is at issue here. Wal-Mart does not seek summary judgment nor do the Parties provide argument regarding Thomas & Marker's breach-of-contract claim regarding the retainage and Change Orders Nos. 032, 034 and 027.

While the *Spearin* doctrine, if applied, might overcome the "general clauses" in the Contract Documents, it does not overcome the specific clauses. If the *Spearin* doctrine were applicable, Thomas & Marker's Second and Third Claims for Relief  would still fail. There are no genuine issues of material fact and Wal-Mart is entitled to judgment as a matter of law on Thomas & Marker's Second and Third Claims for Relief. Thomas & Marker's Second Claim for Relief for breach of an implied warranty of suitability of plans, specifications and geotechnical

-43-

reports and Third Claim for Relief for breach of an implied warranty of accuracy of plans, specifications and geotechnical reports  are DISMISSED.

Thomas & Marker has not identified admissible evidence showing bad faith on the part of Wal-Mart that resulted in unjust enrichment and has not brought an unjust enrichment claim against Wal-Mart Real Estate Business Trust. Therefore, there are no genuine issues of material fact and Wal-Mart is entitled to judgment as a matter of law on Thomas & Marker's Fourth Claim for Relief. Thomas & Marker's Fourth Claim for Relief for unjust enrichment is DISMISSED.

Thomas & Marker's new allegations of bad faith regarding its promissory estoppel claim may not be considered at the summary judgment stage and Thomas & Marker has not identified other evidence satisfying a promissory estoppel claim. Therefore, there are no genuine issues of material fact and Wal-Mart is entitled to judgment as a matter of law on Thomas & Marker's Fifth Claim for Relief. Thomas & Marker's Fifth Claim for Relief for promissory/equitable estoppel is DISMISSED.

Thomas & Marker does not have a separate cause of action for breach of the implied duty of good faith and fair dealing. There are no genuine issues of material fact and Wal-Mart is entitled to judgment as a matter of law on Thomas & Marker's Sixth Claim for Relief. Thomas & Marker's Sixth Claim for Relief for breach of the implied duty of good faith and fair dealing is DISMISSED.

The absence of a settlement agreement precludes a claim for fraud in the inducement and Thomas and Marker's First Amended Complaint does not identify a fraud claim beyond the fraud-in-the-inducement claim. Therefore, there are no genuine issues of material fact and Wal-

Mart is entitled to judgment as a matter of law on Thomas & Marker's Ninth Claim for Relief. Thomas & Marker's Ninth Claim for Relief for fraud in the inducement is DISMISSED.

In a related matter, Wal-Mart argues that the Affidavit of Kirk Marker is inadmissible expert testimony and should be disregarded. However, the Court has not needed to refer to this evidence to reach its conclusions. Therefore, no decision is rendered herein with regard to the Affidavit of Kirk Marker.

Finally, Wal-Mart requests oral argument. However, the Court has reviewed the many pages of memoranda submitted by the Parties, including attachments, as well as the other items docketed and finds that oral argument is not necessary for a full understanding of the issues.

Wal-Mart's Motion for Partial Summary Judgment (Doc. #78) is GRANTED IN PART and OVERRULED IN PART. Thomas & Marker's First Claim for Relief against Wal-Mart for breach of contract and Seventh Claim for Relief against Wal-Mart for costs, expenses and fees pursuant to § 23.16 of the Construction Agreement now remain to be adjudicated. Also remaining to be adjudicated are Wal-Mart's Counterclaims against Thomas & Marker for breach of contract, unjust enrichment, promissory estoppel and for costs and Wal-Mart's Third Party Complaint against Ohio Farmers Insurance Company.

**DONE** and **ORDERED** in Dayton, Ohio this Fifteenth day of September, 2008.

**s/Thomas M. Rose**

_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record

-45-