# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

**THOMAS & MARKER CONSTRUCTION, CO.**

        **Plaintiff,**

**-v-**

**WAL-MART STORES, INC., et al.,**

        **Defendants.**

**Case No. 3:06-cv-406**

**Judge Thomas M. Rose**

---

**ENTRY AND ORDER OVERRULING IN PART AND GRANTING IN PART WAL-MARTS MOTION IN LIMINE TO EXCLUDE IRRELEVANT, PREJUDICIAL OR MISLEADING EVIDENCE FROM TRIAL (Doc. #130); OVERRULING WAL-MART'S MOTION IN LIMINE TO EXCLUDE EVIDENCE PURSUANT TO THIS COURT'S RULING ON DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT (Doc. #132) AND OVERRULING WAL-MART'S MOTION IN LIMINE TO EXCLUDE C.K. SATYAPRIYA'S EXPERT OPINIONS, REPORTS, QUANTIFICATIONS AND ROCK PROFILES (Doc. #133)**

---

This matter is set for trial to a jury beginning December 1, 2008. In preparation for trial**,** Defendant Wal-Mart Stores, Inc. ("Wal-Mart") submitted three motions in limine. (Doc. #130, 132 and 133.) Plaintiff Thomas & Marker Construction Co. ("Thomas & Marker") has responded to all three and Wal-Mart has replied. Wal-Mart's Motions In Limine are, therefore, fully briefed and ripe for decision.

The practice of ruling on motions in limine, although not specifically authorized by the Federal Rules of Evidence or the Federal Rules of Civil Procedure, has developed pursuant to the district court's inherent authority to manage the conduct of trials. *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). The purpose of a motion in limine is to permit the Court to decide evidentiary issues in advance of trial in order to avoid delay and ensure an evenhanded and expeditious trail.

*See Indiana Insurance Co. v. General Electric Co.*, 326 F. Supp.2d 844, 846 (N.D. Ohio 2004)(citing *Jonasson v. Lutheran Child & Family Services*, 115 F.3d 436, 440 (7th Cir. 1997)). Decisions on motions in limine may also save the parties time and cost in preparing for trial and presenting their cases.

Because it is almost always better situated during the actual trial to assess the value and utility of evidence, a court is reluctant to grant broad exclusions of evidence in limine. *Koch v. Koch Industries, Inc.*, 2 F. Supp.2d 1385, 1388 (D. Kan. 1998), *aff'd in part and rev'd in part on other grounds*, 203 F.3d 1202 (10th Cir. 2000), *cert. denied*, 531 U.S. 926 (2000). A court will generally not grant a motion in limine unless the moving party meets its burden of showing that the evidence in question is clearly inadmissible. *Indiana Insurance*, 326 F. Supp.2d at 846. If this showing is not made, evidentiary rulings should be deferred and resolved in the context of the trial. *Id.*

Ultimately, whether a motion in limine is granted or overruled is a matter left to the sound discretion of the trial court. *See Hesling v. CSX Transportation, Inc.*, 396 F.3d 632, 643-44 (5th Cir. 2005). Each of the pending motions in limine will next be addressed keeping in mind that the overruling of a motion in limine at this stage in the proceedings does not necessarily mean that the subject evidence will be admissible in the context of the trial.

### **Wal-Mart's Motion In Limine To Exclude Irrelevant, Prejudicial or Misleading Evidence from Trial**

In this Motion In Limine, Wal-Mart identifies five areas of evidence that it argues are inadmissible pursuant to Federal Rules of Evidence 401, 402 and 403. Each will be addressed seriatim.

### Evidence About Wal-Mart's Ability To Pay and Money Spent On Legal Defense

Wal-Mart first argues that Thomas & Marker should be precluded from introducing evidence about its ability to pay and the money it has spent on a legal defense. Thomas & Marker responds that it "does not intend to offer any evidence relative to Wal-Mart's financial status or profits.

The Sixth Circuit has determined that the showing of the wealth or financial standing of a party is irrelevant in damage actions in which compensatory damages only are recoverable except in exceptional cases such as those cases involving actions for defamation or injury to reputation. *City of Cleveland v. Peter Kiewit Sons' Co.*, 624 F.2d 749,. 757 (6th Cir. 1980). In this case, Thomas & Marker has not pled punitive damages against Wal-Mart. Also, the remaining issues in this case do not involve defamation or injury to reputation. Therefore, evidence of Wal-Mart's ability to pay is irrelevant and not admissible.

Wal-Mart has provided no argument, beyond conclusions, or legal basis, beyond citations to the Federal Rules of Evidence, for its argument that the money it has spent on legal fees is not admissible. Therefore, Wal-Mart has not met its burden of showing that evidence regarding the money it has spent on legal fees is irrelevant under any circumstances. Evidentiary rulings regarding the relevancy of the money Wal-Mart has spent on legal fees will be deferred and resolved, if necessary, in the context of the trial.

<u>Evidence About the Profitability of Wal-Mart Retail Stores In General</u>

Wal-Mart next argues that Thomas & Marker should be precluded from introducing evidence about the profitability of Wal-Mart retail stores in general or specifically about the profitability of Wal-Mart's Supercenter in Springfield, Ohio, which is the subject of this litigation. Wal-Mart also argues that Thomas & Marker should be precluded from introducing

-3-

evidence concerning the number of Wal-Mart retail stores that are built on a monthly or yearly basis and/or the number of retail stores that are in operation today. Thomas & Marker does not offer a specific response but, as indicated above, says that it "does not intend to offer any evidence relative to Wal-Mart's financial status or profits."

Wal-Mart has provided no legal basis, beyond citations to the Federal Rules of Evidence, for its argument that evidence about the profitability of Wal-Mart retail stores in general or specifically about the profitability of Wal-Mart's Supercenter in Springfield, Ohio, which is the subject of this litigation, or evidence concerning the number of Wal-Mart retail stores that are built on a monthly or yearly basis and/or the number of retail stores that are in operation today is not admissible. Therefore, Wal-Mart has not met its burden of showing that evidence regarding the profitability of Wal-Mart retail stores in general or specifically about the profitability of Wal-Mart's Supercenter in Springfield, Ohio, which is the subject of this litigation, or evidence concerning the number of Wal-Mart retail stores that are built on a monthly or yearly basis and/or the number of retail stores that are in operation today is irrelevant under any circumstances. Evidentiary rulings regarding the relevancy of the profitability of Wal-Mart retail stores in general or specifically about the profitability of Wal-Mart's Supercenter in Springfield, Ohio, which is the subject of this litigation, or evidence concerning the number of Wal-Mart retail stores that are built on a monthly or yearly basis and/or the number of retail stores that are in operation today will be deferred and resolved, if necessary, in the context of the trial.

Evidence About the Alleged Settlement Offer Which Jim Fountain Made To Brett Pequignot

Wal-Mart next argues that Thomas & Marker should be precluded from introducing

evidence about the alleged settlement offer which Wal-Mart employee Jim Fountain made to Brett Pequignot. This evidence is not admissible, according to Wal-Mart, because it is prejudicial and misleading under Federal Rule of Evidence 403 and because this Court has previously found that information related to any alleged settlement offer is privileged under Federal Rule of Evidence 408. Thomas & Marker responds that Jim Fountain's offer of $748,710.47 to resolve Thomas & Marker's unforeseen rock claim is relevant and permissible for the purposes of establishing waiver and does not violate Federal Rule of Evidence 408.

Rule 403 provides that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury. Regarding unfair prejudice, just because evidence, if admitted, is unfavorable to Wal-Mart does not mean that the evidence is irrelevant and inadmissible. Regarding confusing the issues or misleading the jury, Wal-Mart's offer of payment seems to be relevant to whether it waived certain contract terms, an issue that remains to be adjudicated. Evidence of Wal-Mart's offer of payment is not inadmissible pursuant to Federal Rule of Evidence 403.

The previous Order of this Court being referred to is this Court's Entry and Order Granting In Part and Overruling In Part Wal-Mart's Motion for Partial Summary Judgment. (Doc. #128) Therein, when addressing Thomas & Marker's allegations of bad faith with regard to its unjust enrichment claim,[1] the Court determined that Federal Rule of Evidence 408 provides that offers to settle and statements made in compromise negotiations regarding a claim are not admissible when offered to prove liability for, invalidity of or amount of a disputed claim. The

---

[1]Wal-Mart has been granted summary judgment on Thomas & Marker's unjust enrichment claim.

Court cited *Bridgeport Music, Inc. v. Justin Combs Publishing*, 507 F.3d 470, 480 (6th Cir. 2007) for this proposition of law. The Court found that, "Thomas & Marker's bad faith evidence is evidence of an offer to settle and evidence of statements made in compromise negotiations. Therefore, the bad-faith evidence that Thomas & Marker has identified is not admissible and may not be considered for purposes of this Motion for Partial Summary Judgment." In sum, this Court has determined that evidence of Wal-Mart's offer to settle was not admissible for purposes of Wal-Mart's Motion for Partial Summary Judgment regarding Thomas & Marker's unjust enrichment claim.

Thomas & Marker now argues that Jim Fountain's offer of $748,710.47 to resolve Thomas & Marker's unforeseen rock claim was made at a time when Wal-Mart was questioning the amount of Thomas & Marker's unforeseen rock claim. This offer was made before the meeting between Thomas & Marker and Wal-Mart officials in Bentonville, Arkansas, where Wal-Mart first indicated that Thomas & Marker may not be entitled to any compensation for the alleged unforeseen rock.

Rule 408 provides, in relevant part, that evidence of an offer to compromise a claim is not admissible when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount. Further, Thomas & Marker argues that an offer of payment is only admissible under Federal Rule of Evidence 408 if it is made after a claim is in dispute. *See Dallis v. Aetna Life Insurance Co.*, 768 F.2d 1303, 1306-07 (11th Cir. 1985).

The Court is unable to find that Jim Fountain's offer of $748,710.47 to resolve Thomas & Marker's unforeseen rock claim is inadmissible at this time for two reasons. First, it was made at a time when the Parties apparently disputed the quantities and expenses associated with Thomas

& Marker's unforeseen rock claim and not after the claim itself was in dispute. Second, Jim

Fountain's offer of $748,710.47 to resolve Thomas & Marker's unforeseen rock claim could

presumably be offered as evidence of waiver and not offered to prove liability for, invalidity of,

or amount of Thomas & Marker's unforseen rock claim. Therefore, Wal-Mart has not met its

burden of showing that evidence of Jim Fountain's offer of $748,710.47 to resolve Thomas &

Marker's unforeseen rock claim is irrelevant, and thus inadmissible, under any circumstances.

<u>Evidence About Facts or Circumstances Related To any Wal-Mart Construction Project Other
than the Springfield, Ohio Project</u>

Wal-Mart next argues that Thomas & Marker should be precluded from introducing

evidence about facts or circumstances related to any Wal-Mart construction project other that the

Springfield, Ohio, project which is the subject of this litigation. Thomas & Marker responds that

evidence relating to the Wal-Mart Supercenter Project located in Upper Sandusky, Ohio, is

relevant and admissible.

Thomas & Marker served as the general contractor on the Upper Sandusky Project and

the same Special Conditions and Supplementary Conditions were included in the contracts for

both the Springfield and Upper Sandusky projects. (Affidavit of Brett Pequignot ¶¶ 4, 6 Nov. 14,

2008.) Wal-Mart approved and paid a change order for removing and replacing unsuitable

materials on the Upper Sandusky Project which were not reflected in the soil borings report for

the Upper Sandusky Project. (Id. ¶¶ 5, 8.) Thomas & Marker argues that Wal-Mart's

contemporaneous differing treatment of unforeseen site conditions between the Springfield

Project and the Upper Sandusky Project is relevant to the issue of waiver as it relates to the

contract for the Springfield Project.

One of the main issues in this trial is whether Wal-Mart waived the contract provisions

for the Springfield Project. Whether Wal-Mart found and paid for unforseen site conditions on the Upper Sandusky Project is not relevant to whether these provisions were waived for the Springfield Project. Further, the site conditions allegedly waived are different. The site conditions allegedly found and paid for on the Upper Sandusky Project are unstable materials termed saturated "fine grain sand" found within the building pad. The site condition allegedly waived on the Springfield Project is unforeseen rock.

Wal-Mart has shown, at this time, that evidence about facts or circumstances related to any Wal-Mart construction project other that the Springfield, Ohio, project which is the subject of this litigation, is inadmissible. However, the granting of a motion in limine at this stage in the proceedings does not necessarily mean that the subject evidence will be inadmissible in the context of the trial provided relevance can be shown in the context of the trial.

<u>Evidence About the Alleged Inaccuracies Contained In the Soil Borings Report</u>

Wal-Marts fifth and final argument in this Motion In Limine is that Thomas & Marker should be precluded from introducing evidence concerning the alleged inaccuracies in the TesTech geotechnical report (the "soil borings report") because this evidence is irrelevant. Thomas & Marker responds that Wal-Mart's position on this matter is a "transparent attempt" to construe a previous order of this Court in a manner which would affirmatively preclude Thomas & Marker's unforeseen rock claim under any circumstances and regardless of Thomas & Marker's ability to establish waiver.

This Court has previously determined that Thomas & Marker was not entitled to rely upon the soil borings report pursuant to the terms of the contract. However, this Court also ruled that there are genuine issues of material fact as to whether Wal-Mart waived the applicable terms

of the contract regarding the subsurface rock.

To show that Wal-Mart waived the contract terms regarding the subsurface rock excavation, Thomas & Marker, according to Wal-Mart, must show that Wal-Mart waived the following contract provisions regarding the subsurface rock excavated by Thomas & Marker:

A PCOB must be submitted within seven (7) days of after discovery of an unforeseen condition; and

A change order must be submitted within thirty (30) days after issuance of a PCOB; and

The contract definition of rock excavation; and

The contract definition of unforeseen condition; and

The contract requirement that a waiver must be in writing.

Thomas & Marker argues that Wal-Mart waived these contract provisions by, among other things, acknowledging the inaccuracy of the soil borings report and by repeatedly acknowledging that the information in the soil borings report was important throughout the entire unforeseen rock claim process. However, the Court fails to see how Wal-Mart's alleged acknowledgment of the inaccuracy of the soil borings report or how Wal-Mart's alleged repeated acknowledgment that the information in the soil borings report was important throughout the entire unforeseen rock claim process is relevant to any of the above issues that Wal-Mart says Thomas & Marker must prove to show waiver.

In addition to the waiver requirements set forth above by Wal-Mart, Thomas & Marker argues that it is entitled to show that Wal-Mart waived the contractual requirement that Thomas & Marker is not entitled to rely upon the soil borings report. If the waiver requirements set forth above by Wal-Mart are the only waiver requirements and whether Wal-Mart waived the contractual requirement that Thomas & Marker is not entitled to rely upon the soil borings report

must not be shown to establish waiver, the accuracy of the soil borings report is not relevant to the issues to be decided.

Wal-Mart has shown that, at this time, evidence concerning the alleged inaccuracies in the soil borings report is inadmissible. However, the granting of a motion in limine at this stage in the proceedings does not necessarily mean that the subject evidence will be inadmissible in the context of the trial provided relevance can be shown in the context of the trial. For example, should Wal-Mart put the soil borings report at issue, its accuracy may become relevant.

Conclusion

Wal-Mart's Motion In Limine To Exclude Irrelevant, Prejudicial or Misleading Evidence from Trial (doc. #130) is GRANTED IN PART and OVERRULED IN PART. Evidence of Wal-Mart's ability to pay is irrelevant and not admissible. However, evidentiary rulings regarding the money Wal-Mart has spent on legal fees, evidentiary rulings regarding profitability of Wal-Mart retail stores in general or specifically about the profitability of Wal-Mart's Supercenter in Springfield, Ohio, which is the subject of this litigation and evidentiary rulings concerning the number of Wal-Mart retail stores that are built on a monthly or yearly basis and/or the number of retail stores that are in operation today will be deferred and resolved in the context of the trial.

Wal-Mart has not met its burden of showing that evidence of Jim Fountain's offer of $748,710.47 to resolve Thomas & Marker's unforeseen rock claim is irrelevant, and thus inadmissible, under any circumstances. However, Wal-Mart has shown that, at this time, evidence about facts or circumstances related to any Wal-Mart construction project other that the Springfield, Ohio, project which is the subject of this litigation, and evidence regarding the alleged inaccuracies in the soil borings report is inadmissible. However, the exclusion of

evidence at this stage in the proceedings does not necessarily mean that the subject evidence will be inadmissible in the context of the trial provided relevance can be shown in the context of the trial.

## Wal-Mart's Motion In Limine To Exclude Evidence Pursuant To This Court's Ruling On Defendant's Motion for Partial Summary Judgment

In this Motion In Limine, Wal-Mart argues that Thomas & Marker should not be permitted to introduce evidence which would support Thomas & Marker's Causes of Action that have been dismissed by this Court. This Court has previously dismissed Thomas & Marker's Causes of Action for unjust enrichment, promissory estoppel/equitable estoppel, breach of implied warranty of suitability of plans, breach of implied warranty of accuracy of plans, breach of implied duty of good faith and fair dealing and fraud in the inducement (the "dismissed claims").

Conceivably, the same evidence could support both a dismissed cause of action and a cause of action that is to be presented to the trier of fact. Therefore, Wal-Mart's argument that any evidence that relates to a dismissed cause of action may not be introduced is not well founded because that same evidence could be relevant to a cause of action remaining to be adjudicated. However, any evidence that relates **only** to a dismissed cause of action is, of course, irrelevant going forward. Therefore, Wal-Mart's Motion In Limine To Exclude Evidence Pursuant To This Court's Ruling On Defendant's Motion for Partial Summary Judgment (doc. #132) is OVERRULED.

## Wal-Mart's Motion In Limine To Exclude C.K. Satyapriya, M.S., P.E.'s Expert Opinions, Reports, Quantifications and Rock Profiles

In this Motion In Limine, Wal-Mart argues to exclude the expert report and testimony of

C.K. Satyapriya pursuant to Federal Rules of Evidence and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Thomas & Marker responds that C.K. Satyapriya's expert opinion and testimony should not be excluded. Neither Party has requested nor does the Court see a need for a *Daubert* hearing at this time.

Wal-Mart first argues that Satyapriya's expert opinions should be excluded because they are contrary to this Court's rulings.[2] Any of Satyapriya's opinions that are contrary to this Court's rulings are irrelevant and will be excluded.

Wal-Mart next argues that Satyapriya's expert opinions should be excluded as legal conclusions. The Sixth Circuit has found that, although an expert's opinion may embrace an ultimate issue to be decided by the trier of fact, the issue embraced must be a factual issue. *Berry v. City of Detroit*, 25 F.3d 1342, 1353 (6th Cir. 1994), *cert. denied*, 513 U.S. 1111 (1995). Said another way, an expert may not offer a legal conclusion. Any of Satyapriya's opinions that are legal exclusions will not be admissible and Thomas & Marker has indicated that it will not offer any testimony through Satyapriya that would constitute legal conclusions.

Wal-Mart's final argument is that Satyapriya's opinions are inadmissible under *Daubert*, *Kumho Tire* and Rule 702. *Daubert* provides that the court must act as a gatekeeper to determine whether an expert's testimony is to be submitted to a jury. *Daubert*, 509 U.S. at 589. Further, the party offering the expert opinion and testimony has the burden of proving admissibility. *Mohney*

---

[2]Wal-Mart asserts that Satyapriya's assertion that it was reasonable and standard in the industry for Thomas & Marker to rely upon the soil borings report provided by Wal-Mart is contrary to this Court's ruling. However, this assertion is not contrary to what this Court has said. This Court found that standard business practice may not include drilling any type of soil borings prior to bidding a project when soil borings report is furnished by the owner. Yet, discussion of the soil borings report may be otherwise irrelevant.

*v. U.S. Hockey, Inc.*, 300 F. Supp.2d 556, 564 (N.D. Ohio 2004)(citing *Daubert*, 509 U.S. at n.10), *aff'd* 138 F. Appx. 804 (6ᵗʰ Cir. 2005), *cert. denied*, 547 U.S. 1020 (2006).

The starting point for an analysis of Wal-Mart's final argument regarding the admissibility of Satyapriya's expert opinions is Federal Rule of Evidence 702.

Rule 702, titled "Testimony by Experts," provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

This rule, as amended in 2000, reflects the Supreme Court's decisions in *Daubert* and *Kumho*. *In re Scrap Metal Antitrust Litigation*, 527 F.3d 517, 528 (6ᵗʰ Cir. 2008)(citing Fed. R. Evid. 702 advisory committee's notes, 2000 amend.)

An expert's opinion is admissible pursuant to Rule 702, then, if the opinion satisfies three requirements:

> First, the witness must be qualified by "knowledge, skill, experience, training, or education." Second, the testimony must be relevant, meaning that it "will assist the trier of fact to understand the evidence or to determine a fact in issue." Third, the testimony must be reliable.

*Id.*(quoting Fed. R. Evid. 702).

Rule 702 provides general standards to assess reliability. *Id.* These standards include whether the testimony is based upon "sufficient facts or data," whether the testimony is the "product of reliable principles and methods," and whether the expert "has applied the principles and methods reliably to the facts of the case." *Id.* at 529 (quoting Fed. R. Evid. 702).

Also, *Daubert* provides a non-exclusive checklist to be consulted in evaluating the

reliability of expert testimony. *Id.* This checklist includes testing, peer review, publication, error rates, the existence and maintenance of standards controlling the technique's operation and general acceptance in the relevant scientific community. *Id.*(citing *United States v. Langan*, 263 F.3d 613, 621 (6th Cir. 2001). These *Daubert* factors, however, do not constitute a definitive checklist and may be tailored to the facts of a particular case. *Id.*(citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999)).

Finally, the task for the trial court in deciding whether an expert's opinion is reliable is to determine whether it rests upon a reliable foundation as opposed to unsupported speculation. *Id.* An expert's testimony may not be excluded because the court believes one version of the facts and not the other. *Id.*

The credibility and accuracy of an opinion must not be confused with its reliability. *Id.* The question of whether an expert's opinion is accurate in light of the use of certain data goes to the weight of the evidence and not to the admissibility of the evidence so long as there is some support for the underlying data in the record. *Id.* at 530. The weight of the evidence is a determination left to the trier of fact. *Id.* at 531.

In this case, Wal-Mart argues that the elevation data relied upon by Satyapriya is unreliable, speculative guesswork. Satyapriya allegedly relied upon data and elevations provided to him by Thomas & Marker and generated by Haley Dusa, Luis Riancho and TP Mechanical. Satyapriya testified that he never verified the methods used to determine the rock elevations and never inquired as to whether the people who took the elevations were qualified to do so.

The Haley Dusa Data

Haley Dusa is a surveying company employed by Thomas & Marker to do the

construction layout and staking on the Project Site. Shortly after the project began, Thomas & Marker asked Haley Dusa to verify the elevations of the rock that Thomas & Marker was encountering. Thomas & Marker instructed Haley Dusa's crew chief, Scott Martin ("Martin") as to those locations at which Thomas & Marker were unable to excavate any further using conventional excavation methods. Martin testified that he took all of the elevations for Haley Dusa.

Wal-Mart now argues that Martin is not a licensed surveyor or has no geological training which would enable him to scientifically and accurately identify where the top of the rock was located. Wal-Mart also argues that, after all of the data was obtained, he was made aware that the tool that he used to shoot the elevations was broken.

Thomas & Marker responds that Martin has eight years of experience as a surveyor, two of which were as a crew chief, and has participated in "multiple" surveying courses at Sinclair Community College. Thomas & Marker also responds by identifying testimony that the tool Martin was using was calibrated by checking it with the benchmarks prior to taking the elevations relative to rock excavation and, if the tool was not working properly at the time, a malfunction would have been revealed by the calibration procedure. As to identifying the "top of the rock," Martin testified that he could see the rock "where they had hit it and scraped it" and he could feel that it was hard.

The data collected by Martin was then provided to Darrell Powell ("Powell"), a survey technician at Haley Dusa, who used the elevation data to generate CAD drawings for Thomas & Marker. Powell allegedly never shot any elevations and never verified the data generated by Martin and never verified the method by which this data was obtained.

Here, Wal-Mart has challenged whether Satyapriya's testimony is based upon sufficient facts or data. Haley Dusa is a surveying company and the data was collected by experienced surveyors whose method of determination of the top of the rock is not unreasonable. Further, the tool used to collect the date cannot clearly be said to have been malfunctioning when the data was collected. Finally, using data collected in the field to generate CAD drawings is not unreasonable. Therefore, the data collected by Haley Dusa cannot be said to be so lacking in probative force and reliability that no reasonable expert could base an opinion upon it. *See Mohney v. U.S. Hockey, Inc.*, 300 F. Supp.2d 556, 565 (N.D. Ohio 2004).

Wal-Mart's challenge goes to the credibility and accuracy of the data upon which Satyapriya's expert opinion is based and not its reliability. The question of whether an expert's opinion is accurate in light of the use of certain data goes to the weight of the evidence and not to the admissibility of the evidence so long as there is some underlying support for the data in the record.

The weight of the evidence is a determination left to the trier of fact. Wal-Mart's criticisms of Haley Dusa are properly relegated to cross examination.

The Luis Riancho Data

Luis Riancho ("Riancho") is a licensed surveyor. He was hired by Jergens Bales to create drawings to indicate where rock was encountered in relation to the test borings and calculate rock quantities excavated from the site. He relied solely upon the data given him by Jergens Bales employees. He did not verify any rock elevations or inquire into how the elevations were taken or by whom.

Chris Koogler ("Koogler"), project foreman for Jergens Bales the excavating

subcontractor on site, testified that at least six different Jergens Bales' employees shot rock elevations, none of which are licensed surveyors. A 100 foot tape measure and a laser were used to generate this elevation data. The top of the rock was visually determined by Koogler.

Douglas Fisher ("Fisher"), a laborer for Jergens Bales, also testified that he randomly took measurements all over the area often times determining where the top of the rock was by the sparks from the bulldozer blade. Fisher, also, was not a licensed surveyor.

Thomas & Marker responds that the majority of elevations taken by Jergens Bales were obtained using a calibrated GPS unit consisting of a hand held receiver which was remotely connected to a master control located at a control point laid out by a professional surveyor. The GPS system and the laser used in conjunction with a control point, according to Thomas & Marker, is a reliable means of obtaining elevations.

As before, Wal-Mart has challenged whether Satyapriya's testimony is based upon sufficient facts or data. Riancho is a licensed surveyor. He  created drawings to indicate where rock was encountered. He created drawings based upon field measurements that were not unreasonably made by individuals who were apparently not expert surveyors. These individuals used equipment and techniques that cannot be said to be unreliable, even when used by individuals who are not expert surveyors. Further, the determination of the top of the rock cannot be said to be made in a clearly unreasonable manner. Therefore, the data provided by Riancho cannot be said to be so lacking in probative force and reliability that no reasonable expert could base an opinion upon it. *See Mohney*, 300 F. Supp.2d at 565.

Wal-Mart's challenge goes to the credibility and accuracy of the data upon which Satyapriya's expert opinion is based and not its reliability. The question of whether an expert's

opinion is accurate in light of the use of certain data goes to the weight of the evidence and not to the admissibility of the evidence so long as there is some underlying support for the data in the record.

The weight of the evidence is a determination left to the trier of fact. Wal-Mart's criticisms of the Riancho data are properly relegated to cross examination.

The TP Mechanical Data

TP Mechanical was hired to perform the utilities excavation on the Project. Similar to Jergens Bales, TP Mechanical would operate excavation equipment to expose bedrock. It would then determine the elevation of the top of the exposed bedrock.

Adam Luensman ("Luensman"), a plumbing superintendent for TP Mechanical, and Jack Livengood ("Livengood") took some rock elevations for their own judgment. Luensman, who was not experienced in surveying or geology, testified that they would merely "eyeball" the rock and the elevation. Livengood would dig the trenches and determine when he thought rock was hit.

Thomas & Marker responds by identifying testimony that the elevations which were "eyeballed" by Luensman were used solely for TP Mechanical's internal purposes. The actual elevations generated by TP Mechanical and used by Satyapriya were obtained using a laser and tripod.

As twice before, Wal-Mart has challenged whether Satyapriya's testimony is based upon sufficient facts or data. There is evidence that what Wal-Mart refers to as "the TP Mechanical Data" was obtained using a laser and tripod based upon top-of-rock locations identified by an individual excavating in the field. This data was collected by TP Mechanical and included in a

letter provided to Satyapriya.

The determination of the top of the rock and the taking of elevations thereof cannot be said to be made in a clearly unreasonable manner. Therefore, the data provided by TP Mechanical cannot be said to be so lacking in probative force and reliability that no reasonable expert could base an opinion upon it. *See Mohney*, 300 F. Supp.2d at 565.

Wal-Mart's challenge goes to the credibility and accuracy of the data upon which Satyapriya's expert opinion is based and not its reliability. The question of whether an expert's opinion is accurate in light of the use of certain data goes to the weight of the evidence and not to the admissibility of the evidence so long as there is some underlying support for the data in the record.

The weight of the evidence is a determination left to the trier of fact. Wal-Mart's criticisms of the TP Mechanical data are properly relegated to cross examination.

Reliance Upon the Haley Dusa, Luis Riancho and TP Mechanical Data

Wal-Mart next argues that Satyapriya's opinions must be deemed unreliable to the extent that they rely upon the Haley Dusa, Luis Riancho and TP Mechanical Data because this data cannot be deemed reliable. However, as determined above, this data cannot be said to be so lacking in probative force and reliability that no reasonable expert could base an opinion upon it. Therefore, Satyapriya's opinions cannot be deemed unreliable based upon the data used.

The question of whether an expert's opinion is accurate in light of the use of certain data goes to the weight of the evidence and not to the admissibility of the evidence so long as there is some underlying support for the data in the record. *Id.* The weight of the evidence is a determination left to the trier of fact. Wal-Mart's criticisms of the quality of the data used by

Satyapriya are, as indicated above, properly relegated to cross examination.

The Soil Borings Report Cannot Form the Basis of Satyapriya's Opinion

Wal-Mart's final argument in this Motion In Limine is that Satyapriya intends to offer opinions as to the quantity of rock that Thomas & Marker expected to find on site based upon the soil borings report. Wal-Mart further argues that Satyapriya should be precluded from relying upon the soil borings report because Thomas & Marker was not entitled to rely upon the soil borings report and because the soil borings report contains information that cannot be deemed to be accurate or complete.

After careful study and review of the many arguments offered by Thomas & Marker as to why the accuracy of the soil borings report is relevant, this Court is yet unable to determine its relevancy. Therefore until the relevancy of the accuracy of the soil borings report is established or the soil borings report is made an issue by Wal-Mart, the accuracy of the soil borings report is not admissible. Because the soil borings report is not currently relevant, Satyapriya is not entitled to rely upon it.

Conclusion

Wal-Mart's Motion In Limine To Exclude C.K. Satyapriya, M.S., P.E.'s Expert Opinions, Reports, Quantifications and Rock Profiles (doc. #133) is OVERRULED. Wal-Mart has not shown that Satyapriya's report or testimony is based upon unreliable facts. However, any of Satyapriya's opinions that are contrary to this Court's rulings, are legal conclusions or are based upon irrelevant facts will be excluded.

**DONE** and **ORDERED** in Dayton, Ohio this Thirtieth day of November, 2008.

**s/Thomas M. Rose**

_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record