THOMAS & MARKER CONSTRUCTION,
CO.                                          Case No. 3:06-cv-406

        Plaintiff,

                                    Judge Thomas M. Rose

-v-

WAL-MART STORES, INC., et al.,

        Defendants.

---

**ENTRY AND ORDER OVERRULING WAL-MART'S MOTION FOR
JUDGMENT AS A MATTER OF LAW (Doc. #212); OVERRULING WAL-
MART'S MOTION FOR A NEW TRIAL OR IN THE ALTERNATIVE
FOR REMITTITUR (Doc. #213); OVERRULING WAL-MART'S MOTION
FOR RELIEF FROM JUDGMENT (Doc. #215); GRANTING THOMAS &
MARKER'S MOTION FOR PRE-JUDGMENT INTEREST (Doc. #218)
AND AWARDING $293,802.96 IN PRE-JUDGMENT INTEREST;
FINDING THAT THOMAS AND MARKER IS THE PREVAILING
PARTY (Docs. #214, 217); AND OVERRULING WAL-MART'S MOTION
FOR A STAY OF EXECUTION (Doc. #216)**

---

This matter was tried to the Jury commencing December 1, 2008, on the Complaint of

Plaintiff Thomas & Marker Construction Co. ("Thomas & Marker") for breach of contract

against Defendant Wal-Mart Stores, Inc. ("Wal-Mart") and on Wal-Mart's Counterclaim for

breach of contract against Thomas & Marker. Thomas & Marker presented its case in chief and

rested. Wal-Mart then moved for a directed verdict pursuant to Fed. R. Civ. P. 50 and said

motion was denied. Next, Wal-Mart presented its case in chief and rested. Wal-Mart then

renewed its directed verdict motion and the Court denied same. Next, Thomas & Marker

presented its rebuttal case and rested. Wal-Mart then renewed its directed verdict motion and the

Court denied same.

On December 22, 2008, Thomas & Marker and Wal-Mart made closing arguments to the Jury. Following objections to the Jury Instructions and Interrogatories by both Parties, the Court instructed the jury and dismissed them to deliberate with eight Interrogatories and two Verdict Forms. The Jury returned its verdict and delivered the two Verdict Forms to the Court along with the corresponding Interrogatories. The Verdict Forms and Interrogatories were signed by all eight jurors. The Verdict Forms are summarized below:

1.      Verdict Form for Thomas & Marker's Waiver Claim[1]

We, the Jury find for Thomas & Marker on Thomas & Marker's waiver claim.

In response to Interrogatory No. 7, the Jury awarded damages to Thomas & Marker on Thomas & Marker's waiver claim in the amount of $986,047.88.

2.      Verdict Form for Wal-Mart's Counterclaim for Breach of Contract

We, the Jury find for Thomas & Marker on Wal-Mart's Counterclaim for breach of contract with regard to the waterline.

On January 15, 2009, the Court entered Judgment. Judgment was entered for Thomas & Marker on Thomas & Marker's breach-of-contract claim against Wal-Mart in the amount of $986,047.88. Further, upon stipulation of the Parties, judgment was entered for Thomas & Marker on Thomas & Marker's claims for retainage in the amount of $514,848.85 and on three non-rock related change orders in the amount of $45,404.68. Finally, judgment was entered for Thomas & Marker on Wal-Mart's Counterclaim for breach of contract. The Parties were requested, pursuant to their stipulation, to submit post-trial briefs on the issue of which Party, if either, was the prevailing party.

---

[1]To find for Thomas & Marker on its breach-of-contract claim, the Jury had to find that Wal-Mart waived certain Contract provisions.

Now before the Court are four post-trial motions filed by Wal-Mart, one post-trial motion filed by Thomas & Marker and the Parties' arguments regarding who is the prevailing party. All of these motions are either fully briefed or the time has run for filing briefs. They are, therefore, all ripe for decision. Each will be addressed seriatim.

## I.    WAL-MART'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

Following completion of the Trial and entry of Judgment, Wal-Mart has timely filed a Renewed Motion for Judgment as a Matter of Law on Thomas & Marker's breach-of-contract claim pursuant to Fed. R. Civ. P. 50(b). (Doc. #212.) Therein, Wal-Mart seeks to have the Judgment for Thomas & Marker on Thomas & Marker's breach-of-contract claim vacated and Judgment entered for Wal-Mart on that claim. Thomas & Marker opposes this Motion.

### A.    Relevant Legal Provisions

Rule 50(b) of the Federal Rules of Civil Procedure provides that a party may file a renewed motion for judgment as a matter of law following the completion of a jury trial. The Court may (1) allow judgment on the verdict; (2) order a new trial; or (3) direct the entry of judgment as a matter of law. Fed. R. Civ. P. 50(b). In this instance, Wal-Mart asks the Court to direct the entry of judgment as a matter of law on Thomas & Marker's breach-of-contract claim.

Judgment as a matter of law is rendered pursuant to Rule 50 when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 149 (2000)(citing Fed. R. Civ. P. 50(a)). The court is to review all of the evidence in the record and draw all reasonable inferences in favor of the nonmoving party. *Id.* at 150. However, when reviewing, the Court may not make credibility determinations or weigh the evidence. *Id.*

Judgment may be directed when the facts are sufficiently clear such that the law requires a particular result. *Weisgram v. Marley Co.*, 528 U.S. 440, 448 (2000).

**B.      Analysis**

The relationship at issue here between Thomas & Marker and Wal-Mart was governed by a series of signed documents termed the Contract. Wal-Mart initially states that the relevant Contract terms are clear and unambiguous. With this the Court agrees.

**1.      Evidence of Signed Change Order**

Wal-Mart first argues that Thomas & Marker's claim fails as a matter of law because there is no evidence of a signed Change Order for the rock excavation. At the outset, it is noted that the Jury found that Wal-Mart waived its right to reject the Change Order at issue on the basis that the work performed was not rock excavation.

In addition to this Jury determination, Thomas & Marker argues that the contractual requirement for a signed Change Order is undisputed, but it is also immaterial. According to Thomas & Marker, the salient inquiry is whether it was a breach of contract for Wal-Mart to deny a Change Order for unforeseen rock excavation on the basis that the subject project was an unclassified site.

The issue in this Trial on Thomas & Marker's breach-of-contract claim was whether Wal-Mart waived certain contract provisions. Wal-Mart would like for the Court to find that Thomas & Marker must show that Wal-Mart waived both the Contract provision regarding unforeseen conditions, rock excavation in this case, and the Contract requirement that any Change Order must be in writing and signed. Thomas & Marker argues that the issue is whether Wal-Mart breached the Contract when it denied a Change Order for the rock excavation.

-4-

Among other things, the Contract provides that any changes in the work to be performed require a Change Order approved by both Parties. The Contract also provides that its terms can only be modified by a written agreement signed by both Parties.

More specifically, the Contract requires that a Preliminary Change Order Budget ("PCOB") be submitted within seven (7) days of discovery of an unforeseen condition. Rock excavation can be an unforeseen condition if it is not indicated by the soils report or other Contract provision. Rock excavation is defined in the Contract as "igneous, metamorphic or sedimentary rock that cannot be removed by rippers or other mechanical methods and, therefore, requires drilling and blasting."

A PCOB must be approved before commencement of the work but it is not a commitment by Wal-Mart for adjustment of the Contract sum. A PCOB for the rock excavation at issue was submitted by Thomas & Marker and approved by Wal-Mart.

Thomas & Marker then submitted a Change Order for the rock excavation and Wal-Mart declined to approve the Change Order because the site was unclassified. The term "unclassified site" is not defined in the Contract but testimony was presented that this term means, among other things, that there are no site conditions, including unforeseen rock, that are not identified in the Contract documents.

The Contract requires that Wal-Mart is to pay Thomas & Marker the Contract lump sum as modified by Change Orders. When an unforeseen condition is encountered, such as rock excavation, Thomas & Marker is to submit a PCOB for the extra work required to address the unforeseen condition. In this case, Wal-Mart approved a PCOB for the rock excavation at issue. The Contract then requires that Thomas & Marker submit a Change Order detailing the cost of

the work required to address the unforeseen condition, the rock excavation in this case.

A Change Order is then to be submitted which includes the actual costs and expenses of the work. The Contract requires that the Owner may accept or reject a Change Order, in its sole discretion, to the extent that it differs from the PCOB.

In this case, the Parties dispute the amount of the Change Order but do not dispute whether this amount differs from the PCOB. Wal-Mart rejected the Change Order at issue, not because it differed from the PCOB, but because the site was unclassified. In other words, because the rock excavation did not constitute an unforeseen condition.

While Wal-Mart may reject the Change Order because it differs from the PCOB, the Contract does not permit Wal-Mart to reject the Change Order for any other reason. It is Wal-Mart's rejection of the Change Order on the basis that the rock excavation did not constitute an unforeseen condition that Thomas & Marker argued was a breach of the Contract.

However, since the Court had previously determined that the rock excavation performed by Thomas & Marker did not meet the contract definition of rock excavation and thus was not an unforeseen condition, to be successful on its breach-of-contract claim, Thomas & Marker had to show that Wal-Mart waived the Contract definition of rock excavation and the definition of unforeseen condition.

Thus, whether Wal-Mart waived the Contract requirement that Change Orders be in writing and approved is, as Thomas & Marker argues, irrelevant. If it were to be relevant, the Jury found that Wal-Mart waived its right to reject the Change Order.

If Wal-Mart waived the Contract definitions of unforeseen condition and rock excavation, Wal-Mart was obligated by the Contract to enter into a Change Order which it did

not do. Thomas & Marker need not show that Wal-Mart waived the Contract requirement that Change Orders be in writing to show that Wal-Mart breached the Contract. Thomas & Marker's breach-of-contract claim does not fail as a matter of law because there was no signed Change Order for the rock excavation.

**2.      Right To Review Submitted Change Order**

Wal-Mart next argues that, once a change order is submitted, it has the right to review the Change Order to ensure the costs and expenses submitted are appropriate. While this may be what the Contract says, Wal-Mart did not reject the Change Order for rock excavation because of the costs and expenses. Wal-Mart rejected this Change Order because the rock excavation was not an unforeseen condition. Wal-Mart's objection to a portion of the Change Order for rock removal does not relieve Wal-Mart of its Contract obligation to pay Thomas & Marker for its legitimate costs and expenses, an amount determined by the Jury based upon the evidence presented.

**3.      Wavier of Change Order Requirement**

Wal-Mart next argues that it did not waive the Contract requirement that a Change Order be in writing and signed by both it and Thomas & Marker. However, the Jury reasonably found that Wal-Mart waived the Contract requirement that, to be effective, a waiver must be in writing.

Further, as determined above, Wal-Mart may have breached the Contract by not approving the Change Order for rock excavation if certain other Contract requirements were waived. If the Contract was breached by failing to approve the Change Order, whether Wal-Mart waived the requirement that a Change Order be in writing is irrelevant.

**4.      Additional Payment for Rock Excavation**

Wal-Mart next argues that, under the Contract terms, Thomas & Marker is not entitled to any additional payment for rock excavation. Again, while this may be true, as set forth above, the Jury found that Wal-Mart waived the applicable Contract terms and then breached the Contract by not approving the Change Order for rock excavation.

**5.      Burden of Proof on Waiver Claim**

Wal-Mart's final argument is that Thomas & Marker did not meet its burden of proof on its waiver claim. However, the Jury reasonably determined otherwise based upon evidence presented at trial.

Ohio law provides that waiver must be established by clear and convincing evidence. *Sematic USA, Inc. v. Otis Elevator Co.*, 2006 U.S. Dist. LEXIS 36817 at *31-32 (N.D. Ohio June 6, 2006). The elements that Thomas & Marker had to prove for each waiver are: (1) that Wal-Mart knowingly waived its rights and/or defenses under the Contract; (2) that Wal-Mart was aware of its rights and defenses under the Contract at the time of the waiver; (3) that Wal-Mart intended to waive its rights and/or defenses at the time of the waiver; (4) that Wal-Mart had full knowledge of the relevant facts at the time of the alleged waiver; (5) that Thomas & Marker reasonably changed its position in a substantial way in reliance upon the waiver; and (6) that the waiver was the result of a clear, unequivocal and decisive act by Wal-Mart. O.J.I. § 501.27.

 When deciding the Motions for Summary Judgment in this matter, the Court determined that there were genuine issues of material fact as to whether Wal-Mart waived certain Contract conditions. Then, at Trial, the following evidence, among other evidence, was presented:

1. Wal-Mart signed the PCOB for the rock excavation at issue,

2. Change Order 008 approved a change required for unforeseen site conditions due to rock conditions encountered in areas unexpected,

3. Change Order 15.1 authorized an extension of the Project's completion date due to unforeseen rock,

4. A Wal-Mart agent represented to Thomas & Marker and others that Thomas & Marker would be compensated for the unforeseen rock excavation,

5. A Wal-Mart agent instructed Thomas & Marker to track its expenses for the unforeseen rock excavation and the quantity of unforeseen rock removed,

6. Wal-Mart instructed Geotechnical Consultants, Inc., Wal-Mart's on-site testing and monitoring company, to verify that Thomas & Marker encountered unforeseen rock and the quantity of the rock removed,

7. Wal-Mart acknowledged the inaccuracy of the Soil Borings Report,

8. Wal-Mart repeatedly requested additional information and substantiation in support of Thomas & Marker's unforeseen rock claim from the time of its first submittal until Wal-Mart's final rejection on September 25, 2006,

9. Wal-Mart repeatedly questioned Thomas & Marker's unforeseen rock quantifications and the amount of Thomas & Marker's expenses as opposed to denying that Thomas & Marker was entitled to compensation for unforeseen rock excavation under the Contract,

10. Wal-Mart repeatedly acknowledged that the information in the Soil Borings report was important throughout the entire unforeseen rock claim process, as opposed to denying that Thomas & Marker was entitled to compensation for unforeseen rock excavation on the basis that the Contract precludes any reliance on that report,

11. Wal-Mart lulled Thomas & Marker into believing it would be compensated for the unforeseen rock excavation so long as the Wal-Mart store opened on time,

12. Mr. Keller, one of Wal-Mart's project managers, verbally represented to Thomas & Marker and its subcontractors that they would be compensated for the unforeseen rock,

13. Multiple witnesses who worked for Thomas & Marker testified that they would have required their excavator to commence drilling and blasting activities had Wal-Mart not provided every indication that Thomas & Marker would be compensated for the unforeseen rock,

14. Multiple witnesses who worked for Thomas & Marker testified that they would have conducted drilling and blasting had Mr. Keller, a Wal-Mart representative, failed to confirm that Thomas & Marker and its subcontractors would be compensated for the unforeseen rock at a jobsite meeting on September 21, 2005, and

15. Thomas & Marker paid Jergens Bales, its excavation contractor, sums well in excess of the $100,000 rock excavation cap in light of Wal-Mart's affirmative indications that Thomas & Marker would be reimbursed for the rock excavation.

The Jury could reasonably conclude from the above evidence that all of the elements of waiver were satisfied for each of the issues that Thomas & Marker claimed were waived.

## C.    Conclusion

The law requires that civil judgments supported by some credible evidence regarding all of the essential elements of a cause of action not be reversed as being against the manifest weight of the evidence. *Atelier District, LLC v. Parking Company of America, Inc.*, No. 07AP-87, 2007 WL 4564304 at *5 (Ohio Ct. App. Dec. 31, 2007)(citing *C.E. Morris Co. v. Foley Construction Co.*, 376 N.E.2d 578 at syllabus (Ohio 1978)). In this case, Thomas & Marker has been fully heard on its breach-of-contract claim and there is a legally sufficient evidentiary basis for a reasonable jury to have found for Thomas & Marker on that claim.

There is a legally sufficient basis for a reasonable jury to have found that Wal-Mart waived the Contract requirement that PCOB No. 4 be submitted within seven (7) days after the discovery of an unforeseen condition, that Wal-Mart waived the Contract requirement that Change Order No. 4 be submitted for approval within thirty (30) days after the issuance of PCOB No. 4, that Wal-Mart waived the Contract requirement that prohibited Thomas & Marker from relying on the Geotechnical report in preparation of Thomas & Marker's bid, that Wal-Mart waived the Contract requirement that all quantities concerning earthwork and utilities be determined by Thomas & Marker and included in Thomas & Marker's bid, that Wal-mart waived its right to reject Change Order No. 4 because it was not rock excavation as defined in the Contract, that Wal-Mart waived the Contract requirement that a waiver must be in writing

and that Wal-Mart breached the Contract. Therefore, Wal-Mart's Renewed (fourth) Motion for Judgement as a Matter of Law (doc. #212) is OVERRULED.

## II.    WAL-MART'S MOTION FOR A NEW TRIAL OR, IN THE ALTERNATIVE, FOR REMITTITUR

Following completion of the Trial of this matter, Wal-Mart has also timely filed a Motion for a New Trial Or, In the Alternative, for Remittitur pursuant to Fed. R. Civ. P. 50(b) and 59. (Doc. #213.) Therein, Wal-Mart seeks to have the Court vacate the judgment entered on January 15, 2009, grant Wal-Mart a new trial on Thomas & Marker's breach-of-contract claim and grant Wal-Mart a new trial on its breach-of-contract counterclaim. If the Court finds that a new trial is not appropriate, Wal-Mart wants the Court to remit the judgment "to a fair and proper amount…." Wal-Mart indicates that it is filing this Motion contemporaneously with, and as an alternative to, its Motion for Judgment as a Matter of Law which is addressed above.

### A.    Relevant Legal Provisions

Pursuant to Rule 59, a new trial may be granted "in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States. Fed. R. Civ. P. 59(a). Courts have interpreted this language to mean that a new trial is warranted when the jury has reached a "seriously erroneous result" as evidenced by: (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion such as the proceedings being influenced by prejudice or bias. *Holmes v. City of Massillon, Ohio*, 78 F.3d 1041, 1045-46 (6th Cir. 1996), *cert. denied*, 519 U.S. 935 (1996).

The Sixth Circuit has determined that a jury's verdict should not be overturned as being against the weight of the evidence unless that verdict was unreasonable. *Id.* at 1047. However, if

a jury verdict is unreasonable, the court has a duty to grant a new trial in order to prevent a miscarriage of justice. *Id.*

Wal-Mart argues that a new trial on Thomas & Marker's breach-of-contract claim and Wal-Mart's breach-of-contract counterclaim is warranted on the following grounds: the judgment is not sustained by the weight of the evidence; the damages awarded by the jury are excessive and appear to have been given under the influence of passion or prejudice; the jury was erroneously instructed, or, in the alternative, failed to follow the instructions of the Court; and/or there is good cause for a new trial. Wal-Mart also argues, in addition, that the jury erroneously equated waiver with a breach of contract. Finally, Wal-Mart argues for remittitur. Each of Wal-Mart's arguments will be addressed seriatim.

**B.      This Court Should Grant a New Trial on Thomas & Marker's Breach-of-Contract Claim Because the Judgment Is Not Sustained By the Great Weight of the Evidence**

Wal-Mart first argues that a new trial on Thomas & Marker's breach-of-contract claim is warranted because the Judgment for Thomas & Marker is not sustained by the great weight of the evidence. At the outset, this argument is not consistent with the law regarding Rule 59 motions. New trials may be granted pursuant to Rule 59(a) "when the verdict is against the weight of the evidence" and not "when the judgment is not sustained by the great weight of the evidence." These are different requirements.

The substance of this argument is also unavailing. The reasons given by Wal-Mart regarding the evidence are essentially the same arguments made in their Renewed Motion for Judgment as a Matter of Law. These arguments are fully addressed above and the Court concluded that Thomas & Marker has been fully heard on its breach-of-contract claim and there is a legally sufficient evidentiary basis for a reasonable jury to have found for Thomas & Marker

on that claim. That conclusion is also applicable here.

**C.     This Court Should Grant a New Trial on Thomas & Marker's Breach-of-Contract Claim Because the Jury Did Not Follow the Instructions As Given By This Court**

Wal-Mart next argues that a new trial on Thomas & Marker's breach-of-contract claim is warranted because the Jury did not follow the instructions as given by this Court. Specifically, Wal-Mart argues that Thomas & Marker was entitled to recover the actual costs and expenses it incurred in the removal of the rock and the Jury awarded an amount in excess of Thomas & Marker's actual costs and expenses.

The Jury awarded Thomas & Marker $986,047.88 on its breach-of-contract claim. Wal-Mart now argues that this number is excessive: (1) because it includes a bonus in the amount of $45,000 that Thomas & Marker did not earn; (2) because Thomas & Marker did not pay Garber Bros. Precision Concrete $22,787.66 of what Garber Bros. was owed; and (3) because Thomas & Marker did not pay Jergens Bales approximately $181,791.51 of the amount included in the Jury award.

First, the bonus. Thomas & Marker argues that it presented testimony in support of the bonus. Thomas & Marker also argues that the incentive bonus was provided for in the Contract. Wal-Mart does not argue that the bonus was not provided for in the contract and instead argues that a "lost bonus" is not provided for in the contract.

Contract damages are intended to place the injured party in the same position it would have been had the contract not been breached. *Atelier*, 2007 WL 4564304 at *12. Contract damages may also include damages resulting from the breach that were contemplated by both parties at the time the contract was made. *Id.*

Wal-Mart argues that the bonus was not part of the actual cost and expenses that Thomas

& Marker incurred for removal of the rock. However, the bonus was contemplated by both parties at the time when the Contract was made and the loss of the $45,000 bonus is a damage expense that would put Thomas & Marker in the same position it would have been had the contract not been breached.

There was evidence from which a reasonable jury could have concluded that Thomas & Marker was entitled to the $45,000 bonus. Therefore, the inclusion of the bonus amount is not an indication that the Jury did not follow the instructions as given by the Court.

Next, the $22,787.66 payment not made to Garber Bros. Thomas & Marker agrees that it did not pay Garber Bros. the $22,787.66. However, Thomas & Marker also argues that the $986,047.88 Jury award did not include the $22,787.66 that it did not pay to Garber Bros.

The Jury apparently based, at least in part, its damage award on a demonstrative exhibit used by Thomas & Marker during closing argument. This exhibit, entitled "Rock Removal Costs," begins with an amount of $1,271,918.56 for Change Order 4.3. Then $22,787.66 is subtracted for Garber Bros. and $263,083.02 is subtracted for savings from Jergens Bales arriving at a total rock removal cost of $986,047.88. This is the amount of damages awarded by the Jury on Thomas & Marker's breach-of-contract claim. Thus, it appears that the amount awarded by the Jury did not include the $22,787.66 that was not paid by Thomas & Marker to Garber Bros.

Finally, the amount Thomas & Marker did not pay Jergens Bales. There is evidence, as described above, that Thomas & Marker excluded "savings" from the Jergens Bales settlement in the amount of $263,083.02. Wal-Mart argues that this exclusion for "savings" from the Jergens Bales settlement should be $444,874.53.

There was evidence presented that Jergens Bales had a claim against Thomas & Marker for rock excavation in the amount of $479,874.53. Further, evidence was presented that Thomas & Marker settled Jergens Bales' claim for $216,791.51. The difference between these two numbers is the amount identified as "savings" from the Jergens Bales settlement.

There was evidence that Thomas & Marker's $216,791.51 settlement with Jergens Bales included $35,000 for Jergens Bales' rock excavation claim and $181,791.51 for taking responsibility for Wal-Mart's waterline claim. However, regardless of what the settlement amount may now be attributed to, $216,791.51 was a cost to Thomas & Marker to resolve Jergens Bales' claim for rock excavation. The difference between Jergens Bales' rock excavation claim and the amount that the claim was actually settled for, $263,083.02, was a "savings" to Wal-Mart and there is evidence that the Jury award recognized this savings.

In sum, Wal-Mart has not shown that the Jury did not follow the damage instructions as given by this Court. Thus, a new trial is not warranted on this basis.

**D.      This Court Should Grant a New Trial On Thomas & Marker's Breach-of-Contract Claim Because the Damages Awarded Were Excessive, Against the Great Weight of the Evidence, and Appear To Have Been Given Under the Influence of Passion Or Prejudice**

Wal-Mart next argues that the excessive damage award reflects the passion and prejudice with which the Jury conducted its deliberations and issued its verdict, and evidences the necessity for a new trial on all matters decided by this Jury. However, as determined above, the Jury's damage award was reasonable based upon the evidence presented.

**E.      This Court Should Grant a New Trial On Thomas & Marker's Breach-of-Contract Claim Because the Jury Was Improperly Instructed**

Wal-Mart next argues that the Court improperly issued instructions to the Jury on the

Agents of the Company and on the implied, express and apparent authority of agents. Wal-Mart also argues that the Court erred in failing to issue a Jury Interrogatory on the unforeseen condition and in failing to instruct the Jury on the proper definition of "Rock Excavation." Wal-Mart also argues that the Jury Instructions erroneously equate waiver to breach of contract.

1. **Relevant Legal Provisions and the Jury Instructions Given**

Trial courts have broad discretion in framing jury instructions. *Stockenhauer v. Sigman*, No. 97-CV-70619-DT, 2005 WL 2346294 at *4 (E.D. Mich. Sept. 24, 2005)(citing *King v. Ford Motor Co.*, 209 F.3d 886, 897 (6th Cir. 2000)). Jury instructions are viewed as a whole to determine whether they adequately inform the jury of relevant considerations and provide a basis in law for aiding the jury to reach its decision. *Id.* A judgment may be reversed based upon improper jury instructions only if the jury instructions, viewed as a whole, were confusing, misleading or prejudicial. *Id.*(citing *Beard v. Norweigian Carribbean Lines*, 900 F.2d 71, 72-73 (6th Cir. 1990)).

The Jury Instructions given in this case were generally taken from *Federal Jury Practice and Instructions* and from the *Ohio Jury Instructions*. They are summarized as follows: The function of the jury was set forth followed by an indication that the action was between persons of equal worth and standing in the community. The Jury was then instructed that the parties were companies and that companies may act only through natural persons as their agents or employees. The Jury was next given a standard instruction regarding agents of companies indicating that a principal is bound by the acts of its agent while acting within the scope of his or her authority. Express and implied authority were then described.

Next the relevant burdens of proof were defined followed by a standard instruction

defining and describing what is and what is not evidence. The Jurors were then instructed that they could take notes but that their notes could not be shared with other jurors and their decision must be based on what they recall of the evidence. Counsel's objections during Trial and the Court's rulings thereon were next explained. The Jury Instructions then described and defined the types of witnesses, the evaluation of their credibility and impeachment of the witnesses. The use of depositions, transcripts and exhibits was next set forth.

The Court then read a list of twenty-four (24) stipulated facts followed by an overview of the Parties' claims. The Jury was specifically instructed, among other things, that Thomas & Marker is prevented from recovering compensation for the rock excavation unless Wal-Mart waived its right to deny this claim pursuant to the terms of the Contract. The Court then set forth the determinations that it had previously made as a matter of law. Specifically, among others, the Court instructed the Jury that the rock removed by Thomas & Marker does not meet the Contract definition of rock excavation and Thomas & Marker is, therefore, prevented from recovering compensation for the rock removal unless Wal-Mart waived, in addition to other Contract provisions, the Contract definition of rock excavation and unless Thomas & Marker establishes that it encountered an unforeseen condition as defined by the Contract.

The Court then described Thomas & Marker's waiver claim. Here, the Jury was instructed that Wal-Mart is bound by the conduct taken on its behalf by its employees while acting within the scope of their authority and that Wal-Mart is presumed to have understood and to have knowledge of the Contract terms. The elements of waiver taken from O.J.I § 501.27 were listed. The Jury was then instructed that, regarding Thomas & Marker's waiver claim, the Contract rights that Wal-Mart must be shown to have waived are:

(1) The requirement that Preliminary Change Order Budget ("PCOB") No. 4 be submitted within seven (7) days after the discovery of an alleged "Unforeseen Condition;" and

(2) The requirement that Change Order No. 4 be submitted for approval within thirty (30) days after the issuance of PCOB No. 4; and

(3) The Contract provisions that prohibit Thomas & Marker from relying upon the geotechnical report prepared by TesTech in preparation of its bid; and

(4) The requirement that all quantities concerning earthwork and utilities shall be determined by the contractor and included as part of its lump sum bid; and

(5) The right to reject Change Order No. 4 because it was not "Rock Excavation" as defined by the Contract; and

(6) The requirement that, to be effective, a waiver must be in writing and signed by Wal-Mart.

The terms "Unforeseen Condition" and "Rock Excavation" were then defined. Specifically, an "Unforeseen Condition" was defined as a condition encountered at the Project site which was not reasonably discoverable prior to the deadline for submitting the Contractor's Bid Form for the Project through the exercise of due diligence by the Contractor. "Rock Excavation" was defined as igneous, metamorphic or sedimentary rock that cannot be removed by rippers or other mechanical methods and, therefore, requires drilling and blasting. The Jury was then instructed that, before it could find for Thomas & Marker on its breach-of-contract claim, it must find that Wal-Mart breached the Contract by not approving the change order for rock removal and that Thomas & Marker substantially performed its duties under the Contract. Next, Wal-Mart's counterclaim for breach of contract regarding the installation of a water line was described and the Jury was instructed as to what must be found for Wal-Mart to be successful on its counterclaim.

The Jury Instructions concluded with instructions on damages, interrogatories and their

duty in deliberating. The Jury was given eight (8) Interrogatories, each requiring multiple

answers. The Interrogatories are summarized as follows:

> No. 1: Waiver of Contractual Timing Requirement for Submission of Preliminary Change Order Budget ("PCOB") No. 4

> No. 2: Waiver of Contractual Timing Requirement for Submission of Change Order No. 4

> No. 3: Waiver of Contract Provisions That Prohibit Thomas & Marker From Relying Upon the Geotechnical Report Prepared by TesTech In Preparation of Its Bid

> No. 4: Waiver of Contract Requirement That All Quantities Concerning Earthwork and Utilities Shall Be Determined By the Contractor and Included As Part of Its Lump Sum Bid

> No. 5: Waiver of the Right To Reject Change Order No. 4 Because It Was Not "Rock Excavation" as Defined by the Contract

> No. 6: Wavier of Contractual Requirement That, To Be Effective, a Waiver Must Be In Writing

> No. 7: Breach of contract by Wal-Mart by failing to approve Change Order No. 4

> No. 8: Breach of contract by Thomas & Marker by improperly installing a waterline

Finally, the Jury was given a Verdict Form for Thomas & Marker's Waiver Claim and a

Verdict Form for Wal-Mart's Counterclaim for Breach of Contract. The Verdict Forms gave the

Jury the option of finding for either Party on each of the two issues.

## 2.     Agency Instruction

Wal-Mart's first argument regarding the Jury Instructions is that the Court's agency

instruction was unnecessary and legally improper. It was unnecessary and illegally improper,

according to Wal-Mart, because Thomas & Marker never pled, nor did it argue that it was

attempting to enforce an oral contract entered into by one of the Wal-Mart employees. Wal-Mart

goes on to state that the issue in this case was waiver and whether Wal-Mart, by its actions, knowingly and intentionally waived certain provisions of its contract.

The Court agrees that whether there was an oral contract was not at issue here and waiver was. Since there was evidence that certain Wal-Mart project managers made certain representations to Thomas & Marker employees, the Jury needed to be told that a company may only act through its agents and employees and be given the legal definition of an agent. The Jury needed a basis to evaluate whether Wal-Mart took the actions necessary to waive the Contract requirements.

Wal-Mart also objects to the portion of the Agency Instruction that indicates that Wal-Mart is presumed to have understood and to have knowledge of those terms contained within the Contract. According to Wal-Mart, this instruction is likely to have confused the Jury because Thomas & Marker is required to prove each of the elements of waiver including that Wal-Mart was aware of the Contract provisions which entitled it to reject the Change Order. However, the Jury was not likely confused because it was given clear and explicit instructions on each of the elements of waiver and was told that Thomas & Marker must prove each of the elements to succeed on its breach-of-contract claim.

Wal-Mart cites *In re McFarland*, 126 B.R. 885, 888-889 (Bankr. S.D. Ohio 1991), for the proposition that a presumption of the relinquishment of a known right cannot be rested on a presumption that the right was known. Relating this holding to the case at hand, Wal-Mart argues that a finding of waiver by the Jury cannot be based upon the presumed knowledge of Wal-Mart's employees of all of the relevant facts surrounding the project or of all of Wal-Mart's rights under the contract. This argument fails for two reasons. First, *In re McFarland* does not

involve the waiver of the terms of a Contract or a corporate entity which can only act through its agents. Conversely, there is a well-recognized presumption that a party to a contract is aware and has knowledge of the terms contained therein. Second, as indicated above, the Jury was clearly and explicitly  instructed that Thomas & Marker must prove each of the elements of waiver to succeed on its breach-of-contract claim.

**3.      Instruction On Unforeseen Condition**

Wal-Mart next argues that the Court should have issued a Jury Interrogatory on whether the Jury determined that the rock excavation was a unforeseen condition. This argument, too, is unavailing.

 The Jury was instructed that Thomas & Marker could not recover compensation for Change Order No. 4 unless Wal-Mart waived the Contract definition of rock excavation and established that it encountered an unforeseen condition as defined by the Contract. Therefore, to arrive at the finding that Thomas & Marker was entitled to compensation for Change Order No. 4, the Jury must have determined that the rock excavation was an unforeseen condition.

Further, pursuant to the Contract, rock excavation can be an unforeseen condition if it is not indicated by the soils report. There was evidence that the soils report did not show the rock that was excavated, and the Jury reasonably determined, from the evidence submitted, that Wal-Mart waived Contract provisions that prohibit Thomas & Marker from relying upon the soils report. From this, the Jury may reasonably have concluded that the rock excavation was an unforeseen condition. Even though there was no need for an interrogatory on unforeseen condition, there is also no legal requirement for a separate interrogatory on each relevant term in a contract.

**4.      Definition of "Rock Excavation"**

Wal-Mart's next argument is that the Court did not provide the proper definition of "rock excavation" to the Jury. The Jury Instructions define rock excavation as "igneous, metamorphic or sedimentary rock that cannot be removed by rippers or other mechanical methods and, therefore, requires drilling and blasting. Wal-Mart argues that two additional paragraphs from the Contract should have been included. One says that, "[t]he excavation and disposal of all 'Rock Excavation' that is indicated by the soils report shall be considered unclassified excavation and shall be included with the site work grading as part of the lump sum base bid." The other paragraph says that, "[i]f 'Rock Excavation' is required that is not indicated by the soils report and constitutes an unforeseen condition, Contractor may submit a PCOB to Owner in accordance with Section 3.3 of the Contract and Article 7 of the General Conditions and these Supplementary Conditions." However, neither of these paragraphs are relevant to the definition of "rock excavation." The first of these paragraphs discusses how to bid "rock excavation" that is indicated in the soils report and the second discusses how to address "rock excavation" that is not indicated in the soils report. Neither are relevant or even helpful to the definition of "rock excavation."

**5.      Waiver Equivalent To Breach of Contract**

Wal-Mart's final argument is that the Jury Instructions equate waiver to breach of contract. Wal-Mart did not raise this objection at trial. However, if it were now to be considered, this argument, too, is not well founded. The Jury Instructions and Interrogatories require the Jury to find that several Contract provisions were waived and to separately find that Wal-Mart breached the Contract.

Wal-Mart argues that, in order to find that Wal-Mart breached the Contract, the Jury must find that Wal-Mart agreed to pay a particular price for the rock excavation by virtue of a signed Change Order and that the agreed price was never paid. This is essentially the same argument that Wal-Mart has made at least a couple of times above and merits essentially the same result. The Jury could reasonably have found that Wal-Mart breached the Contract by not agreeing to and paying the Change Order. In fact, the Jury found that Wal-Mart waived several Contract provisions including the prohibition that Thomas & Marker could not rely upon the soil borings report, the requirement that all quantities concerning earthwork and utilities were to be included in the lump sum bid, Wal-Mart's right to reject the Change Order No. 4 because it was not rock excavation and the Contract requirement that a waiver must be in writing. In essence, the Jury was left to determine the price that should have been paid and did so.

**6.      Conclusion**

The Jury Instructions on Thomas & Marker's breach-of-contract claim, viewed as a whole, adequately informed the Jury of the relevant considerations and provided a basis in law upon which the Jury reached its decision. Therefore, a new trial on Thomas & Marker's breach-of-contract claim will not be granted because the Jury was improperly instructed.

**F.      This Court Should Grant a New Trial On Wal-Mart's Counterclaim Because the Jury Verdict on Wal-Mart's Counterclaim Was Against the Great Weight of the Evidence**

Wal-Mart first argues, regarding its Counterclaim, that a new trial on the Counterclaim is warranted because the Judgment for Thomas & Marker is not sustained by the "great weight" of the evidence. Wal-Mart's Counterclaim is a breach-of-contract claim regarding installation of a waterline.

At the outset, this argument is not consistent with the law regarding Rule 59 motions. New trials may be granted pursuant to Rule 59(a) "when the verdict is against the weight of the evidence" and not "when the judgment is not sustained by the great weight of the evidence." These are different requirements.

The substance of this argument is also unavailing. The reasons given by Wal-Mart regarding the evidence are that it informed Jergens Bales that the waterline was improperly installed and demanded a correction and that Jergens Bales admitted that the waterline was improperly installed.

What Wal-Mart does not mention is that there was also evidence that there was a conflict in the drawings showing where the waterline was to be located and that Wal-Mart refused to accept a proposed alternative remedy, albeit the second proposed alternative, to the waterline issue that was acceptable to the City of Springfield.

Wal-Mart elected to perform the waterline installation in a different manner. Yet, the law provides that a contractor has a right to cure a perceived breach of contract and violation of that right to cure results in the owner being precluded from seeking recovery for the costs it paid a third party to remedy the perceived breach. *See Williford v. Price*, No. 72739, 1998 Ohio App. LEXIS 2158 (Ohio Ct. App. May 14, 1998).

There was evidence from which the Jury could reasonably have concluded that Thomas & Marker did not breach the contract regarding the waterline installation. Wal-Mart will not be granted a new trial on its Counterclaim on the basis that the Jury Verdict was against the great weight of the evidence.

**G.     This Court Should Grant a New Trial On Wal-Mart's Counterclaim Because the Jury Did Not Follow the Court's Instructions**

Wal-Mart next argues, regarding its Counterclaim, that a new trial should be granted because the Jury did not follow the Court's instructions. The "failure to follow" identified by Wal-Mart is that on the verdict form for the Counterclaim, the jury was instructed to write in an amount of money to be awarded to Thomas & Marker and did not do so.

This argument, too, is unavailing. The Verdict Form for Wal-Mart's Counterclaim for breach of contract included no instruction regarding an amount of money.

Perhaps Wal-Mart is referring to Interrogatory No. 8 entitled "Wal-Mart's Counterclaim for Breach of Contract." In Interrogatory No. 8, the Jury was instructed, "If you answered "Yes" to both Interrogatories (8A) and (8B), what amount of damages, if any, will compensate Wal-Mart for Thomas & Marker's breach of the Contract with regard to improper installation of the waterline?…" The Jury did not answer "Yes" to both Interrogatories (8A) and (8B) and thus awarded no damages to Wal-Mart by drawing a horizontal line through the space identified for an entry of damages. In further support of no award of damages to Wal-Mart, the applicable Verdict Form found for Thomas & Marker on Wal-Mart's Counterclaim.

It clearly appears that the Jury intended to award no damages to Wal-Mart on its Counterclaim and the applicable Interrogatory and Verdict Form consistently indicate such a conclusion. Wal-Mart will not be granted a new trial on its Counterclaim on the basis that the Jury did not follow the Court's instructions.

## H.     A Remittitur Is Required

Wal-Mart's final argument in its Motion for a New Trial is that, if this Court decides that a new trial is not appropriate on Thomas & Marker's breach-of-contract claim, the Court should reduce the damages awarded on that claim to a more fair and reasonable amount in line with the

Contract and the evidence presented at trial.

The Court has decided that a new trial is not warranted based upon Wal-Mart's arguments as more fully discussed above. The Court has also decided that a remittitur is not required.

The arguments Wal-Mart makes in favor of a remittitur are the same arguments that it made above regarding the value of the lost bonus and the amount of the offset attributed to the settlement with Jergens Bales. Those arguments did not justify a new trial on the basis that the Jury did not follow the Court's instructions and, for the same reasons, they do not justify a remittitur.

## I.      Conclusion

Wal-Mart has not shown that the verdicts on Thomas & Marker's breach-of-contract claim or on its Counterclaim for breach of contract are against the weight of the evidence or that the damages are excessive or the trial was unfair. Further, Wal-Mart has not shown that a remittitur is required. Therefore, Wal-Mart's Motion for a New Trial Or, In the Alternative, for Remittitur (doc. #213) is OVERRULED.

## III.     WAL-MART'S MOTION FOR RELIEF FROM JUDGMENT PURSUANT TO RULE 60(b)

Following completion of the Trial of this matter, Wal-Mart timely filed a Motion for Relief From Judgment Pursuant To Rule 60(b). (Doc. #215.) Therein, Wal-Mart seeks relief from judgment because, according to Wal-Mart, the Judgment in this case is based upon legal error and/or void. The Judgment is based upon legal error and/or void because the Court issued a remand order on June 17, 2008, that divested the Court of jurisdiction to take any further action in this case.

**A.**     **Procedural Background**

The Complaint in this matter was originally filed in November of 2006 in the Court of Common Pleas of Clark County, Ohio. Thomas & Marker, an Ohio corporation, was the only named Plaintiff and Wal-Mart, a Delaware corporation whose principal place of business is in Arkansas, was the only named Defendant. (Doc. #3).

The original Complaint was subsequently removed by Wal-Mart to this Court on December 22, 2006, based upon this Court having diversity jurisdiction. (Doc. #2.) After removal and the Preliminary Pretrial Conference, and upon a **Joint** Motion for Leave to Amend, Thomas & Marker filed an Amended Complaint. (Doc. #13.) This Amended Complaint was filed on April 26, 2007.

The Amended Complaint added Wal-Mart Real Estate Business Trust, Jergens Bales Contractors ("Jergens Bales") and the Clark County Treasurer as Defendants. Jergens Bales and the Clark County Treasurer are citizens of Ohio. The Amended Complaint also brought a claim for foreclosure of a mechanics lien on the subject property, added a claim against Wal-Mart and brought various claims against Jergens Bales.

Wal-Mart Real Estate Business Trust is the owner of the property that is at issue in the Amended Complaint. Jergens Bales was hired by Thomas & Marker as a subcontractor to install the water line and excavate the rock at issue in this case. Jergens Bales also had a mechanics lien on the subject property. The Clark County Treasurer is allegedly necessary to Thomas & Marker's foreclosure action by virtue of his duty to collect real estate taxes.

Adding Jergens Bales and the Clark County Treasurer destroyed the diversity of citizenship that was present when Thomas & Marker's original Complaint was filed. However,

this destruction of diversity citizenship was not identified by the Court. It also was not brought to the Court's attention until more than one year later when Wal-Mart did so during a telephone conference on May 30, 2008, just one day before the dispositive motion deadline that existed at the time.

Wal-Mart's counsel at the time represented to the Court that he discovered the jurisdictional defect when he became Wal-Mart's counsel and immediately raised the issue with Thomas & Marker's counsel who stated that he knew diversity had been destroyed for some time and had elected, as he may, not to raise the issue with the Court. At that time, both Parties indicated that they wished to remain in federal court.

Wal-Mart's counsel at the time had first entered an appearance on April 15, 2008, followed by a Substitution of Counsel on April 18, 2008. Wal-Mart's previous counsel had not raised the jurisdictional issue.

The Parties were then given until not later than June 9, 2008, to show cause as to why this matter should not be remanded to the Court of Common Pleas of Clark County, Ohio. On June 9, 2008, Thomas & Marker responded to the Show Cause Order by filing a Motion for Leave of Court To Dismiss Jergens Bales and the Clark County Treasurer arguing that this would completely restore diversity jurisdiction. Therein Thomas & Marker indicates that it had reached a settlement and compromise with Jergens Bales and with the Clark County Treasurer and that Wal-Mart had not agreed to a stipulated dismissal of these two Parties. Accompanying this Motion were two stipulations. One was between Thomas & Marker and the Clark County Treasurer and the other between Thomas & Marker and Jergens Bales. Thomas & Marker did not then dismiss its claim for foreclosure of its mechanics lien on the subject property.

Wal-Mart responded that it wished to remain in federal court but wanted to insure that the Court has proper jurisdiction. Wal-Mart believed that the most prudent course of action would be for the Court to dismiss Thomas & Marker's claims against Jergens Bales with conditions and to dismiss Thomas & Marker's foreclosure claim against Wal-Mart with prejudice.

On June 17, 2008, this Court entered an Order remanding Thomas & Marker's Amended Complaint to the Court of Common Pleas of Clark County, Ohio. (Doc. #75.) The Amended Complaint was remanded because Jergens Bales was a necessary party to Thomas & Marker's foreclosure claim because Jergens Bales also had a mechanics lien on the subject property. Since there was apparently not complete diversity of the Parties, the matter was remanded pursuant to 28 U.S.C. § 1447(c).

Approximately four hours before this Court's remand Order was docketed, Thomas & Marker filed a copy of a release of mechanics lien indicating that Jergens Bales had released its mechanics lien on the subject property. The release of Jergens Bale's mechanics lien removed any requirement for Jergens Bales to remain a defendant thereby permitting the dismissal of Jergens Bales and restoring complete diversity between the Parties. Seeing this the next day, the Court immediately conducted a telephone conference with the Parties. During this conference, the Parties again expressed their mutual desire to remain in federal court and agreed that the Court was able to dismiss Jergens Bales, the non-diverse defendant and restore subject matter jurisdiction. Following the telephone conference on June 18, 2008, the Court vacated and struck its previous order remanding Thomas & Marker's Amended Complaint to the Court of Common Pleas of Clark County, Ohio. (Doc. #77.)

On July 1, 2008, the Parties submitted and the Court approved an Agreed Entry that dismissed Thomas & Marker's foreclosure claim with prejudice. (Doc. #92.) The Agreed Entry also dismissed all of Thomas & Marker's claims against Jergens Bales and the Clark County Treasurer with prejudice. Finally, the Agreed Entry indicates that Jergens Bales expressly disclaims any claims against Wal-Mart which may arise out of the subject matter of this action. This Order was followed by an Entry and Order dissolving the Show Cause order regarding subject matter jurisdiction, also filed on July 1, 2008. (Doc. #93.)

Over the next six months, both Parties engaged in motion practice and trial preparation activities including the filing of multiple pre trial motions. In one such action, the Parties submitted an agreed proposed Final Pretrial Order that indicates that this Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(1) and that the issues related to subject matter jurisdiction "were resolved by this Court's order of June 18, 2008." (Doc. #129.) The Amended Final Pretrial Order that was ultimately approved by the Court and docketed includes these same representations. (Doc. #145.)

The remaining issues between the Parties were tried to a Jury over a four-week period beginning December 1, 2008. The Jury found for Thomas & Marker and against Wal-Mart on both issues that were tried. Wal-Mart now argues that this Court's remand order of June 17, 2008, divested it of subject matter jurisdiction to proceed further thereby making subsequent actions by the Court, including the Judgment, illegal and thus void.

**B.     Relevant Legal Provisions**

There are two areas of law relevant to Wal-Mart's request for relief from the final Judgment entered in this case. The first is Wal-Mart's entitlement to relief under Fed. R. Civ. P.

60(b). The second is the vacating of the Court's removal order.

## 1.  Rule 60(b)

Rule 60(b) permits a court to grant relief to a party from a final judgment because of, among other things, mistake, inadvertence, surprise or excusable neglect. Fed. R. Civ. P. 60(b)(1). A claim for "strictly legal error" falls into the category of "mistake." *Hopper v. Euclid Manor Nursing Home, Inc.*, 867 F.2d 291, 294 (6th Cir. 1989).

Rule 60(b) motions are addressed at the sound discretion of the court. *Jacobs v. DeShetler*, 465 F.2d 840, 843 (6th Cir. 1972). Further, equitable principles may be taken into account by the court in its exercise of discretion. 11 Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, *Federal Practice and Procedure* § 2857 (2d ed. 1995). Finally, there is more reason for liberally reviewing a Rule 60(b) motion when the merits of the case have never been considered than there is when the judgment has become final after a full trial on the merits, as is the case here. Wright, Miller & Kane, supra, § 2857.

Doubts should be resolved in favor of the movant seeking timely relief pursuant to Rule 60(b) so long as the movant has a meritorious defense. Id. However, Rule 60(b)(1) cannot be used when the court's alleged mistake is that it overlooked some facts. *In re Asbestos Litigation*, 173 F.R.D. 87 at n.2 (S.D.N.Y. 1997). In addition, Rule 60(b) cannot be used to avoid the consequences of decisions deliberately made yet later revealed to be unwise. *Hopper*, 867 F.2d at 294 (citing *Federal's Inc. v. Edmonton Investment Co.*, 555 F.2d 577, 583 (6th Cir. 1977)).

It is not altogether clear under what circumstances relief can be sought under Rule 60(b) for an error made by the court. Wright, Miller & Kane, supra, § 2858. Some courts have made broad statements that support not providing relief under Rule 60(b) for mistakes made by the

Court. Judge Friendly, writing for the Second Circuit, said:

> Under such circumstances there is indeed good sense in permitting the trial court
> to correct its own error and, if it refuses, in allowing a timely appeal from the
> refusal; no good purpose is served by requiring the parties to appeal to a higher
> court, often requiring remand for further trial proceedings, when the trial court is
> equally able to correct its decision in the light of new authority on application
> made within the time permitted for appeal.

*Schildhaus v. Moe*, 335 F.2d 529, 531 (2d Cir. 1964).

Other courts have presented a different view. Judge Aldrich, writing for the First Circuit,

said:

> We neither understand the basis for this interpretation, nor sympathize with it. If
> the court merely wrongly decides a point of law, that is not "inadvertence,
> surprise, or excusable neglect." Moreover, these words, in the context of the rule,
> seem addressed to some special situations justifying extraordinary relief.
> Plaintiff's motion is based on the broad ground that the court made an erroneous
> ruling, not that the mistake was attributable to special circumstances. We would
> apply the same equitable conception to "mistake" as seems implicit in the three
> accompanying grounds, under the principle of *noscitur a sociis*.

*Silk v. Sandoval*, 435 F.2d 1266, 1267-68 (1st Cir. 1971), *cert. denied*, 402 U.S. 1012 (1971).

## 2.    Vacation of Court's Remand Order

The procedure for the remand of a matter is set forth in 28 U.S.C. § 1447(c) and (d). The

reviewability of a remand order often depends upon the particular grounds for and timing of the

remand decision. 14C Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, *Federal*

*Practice and Procedure* § 3740 (3d ed. 1998).

Section 1447(d) has been construed to preclude further consideration or review of a

district court's order invoking the grounds specified in section 1447(c) to remand a case before

trial because a remand to a state court divests a district court of jurisdiction such that it may not

take any further action on the case. *Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527,

531 (6th Cir. 1999), *cert. denied*, 528 U.S. 1076 (2000). Specifically, neither a remand for a defect in the removal procedure nor a remand for lack of subject matter jurisdiction are reviewable, "even if based upon erroneous principles or analyses." *Page v. City of Southfield*, 45 F.3d 128, 131 (6th Cir. 1995). In general, the ban on review of a remand decision is to spare the parties undue delay and interruption of the litigation and further postponement in reaching the merits of the dispute. Wright, Miller & Kane, supra, § 3740; *In re Carter*, 618 F.2d 1093, 1098 (5th Cir. 1980).

However, the considerations of prompt and efficient resolution of controversies do not apply with the same force to remand orders issued after entry of final judgment. *Carter*, 618 F.2d at 1099. This is because, among other reasons, that federal judicial resources expended upon the trial of a matter cannot be "recouped" by relitigation in a state court. *Id.* Thus, courts have held that remand orders issued "on whatever grounds" after the entry of final judgment are reviewable.[2] *Id* at 1100. However, the concepts of equity, waiver and estoppel are inapplicable when a party seeks removal to a federal court, permits the case to be tried to judgment and then seeks a remand order only when judgment turns out to be unfavorable. *Id.*

A district court may have subject matter jurisdiction based on the diversity of citizenship of the parties, as is the case here. To have diversity of citizenship, there must be a controversy between citizens of different states, all of whom on one side of the controversy are citizens of different states from all parties on the other side. *Grant County Deposit Bank v. McCampbell*, 194 F.2d 469, 471 (6th Cir. 1952). Further, when a party is indispensable to the action and her or

---

[2]Section 1447(c) applies to only those remand orders entered at any time prior to final judgment. *In re Carter*, 618 F.2d at 1098. "Vacation of the final judgment of a federal court that was without jurisdiction to hear the case, and a subsequent remand order, are not provided for in section 1447(c)." *Id.*

his joinder destroys diversity of citizenship, she or he must be joined with the resulting loss of subject matter jurisdiction. *Id.* at 472. By the same token, if diversity jurisdiction is based upon the existence of non indispensable parties, jurisdiction, although not existing at the time of filing, can be acquired by dismissing the action as to such parties. *Id.*

Finally, section 1447(d) does not authorize sua sponte remands for procedural defects. *Page*, 45 F.3d at 133. It does, however, authorize sua sponte remands for lack of subject matter jurisdiction. *Id.* at n.8.

## C.    Analysis

The alleged legal error or mistake that forms the basis for Wal-Mart's Rule 60(b) Motion was the vacation of this Court's remand order. Wal-Mart argues that this Court was without power to vacate its remand order.

After briefing by the Parties, the Court issued a remand order (doc. #75) on the basis that it did not have subject matter jurisdiction due to the presence of a mechanics lien brought by Jergens Bales making Jergens Bales a necessary party and destroying subject matter jurisdiction. However, unbeknownst to the Court, Thomas & Marker had filed a notice that Jergens Bales had released its mechanics lien. This notice was docketed approximately four (4) hours before the Court's remand order was docketed. Thus, when the Court's remand order was docketed, the Court actually had subject matter jurisdiction. When it recognized this timing difference the next day, the Court immediately vacated and struck its remand order. If a mistake was made, it was made when the docket was not checked for Thomas & Marker's notice before the remand order was docketed.

There are several reasons why Wal-Mart's Rule 60(b) Motion should not be considered

by the Court. There are also several reasons why Wal-Mart's Rule 60(b) Motion fails if it were to be considered.

First, Rule 60(b) cannot be used to avoid the consequences of failing to move for remand, a decision deliberately made, before trial. Rule 60(b) cannot be used to avoid the consequences of decisions deliberately made yet later revealed to be unwise. In this case, both Parties agreed to this Court's subject matter jurisdiction.

Second, Rule 60(b)(1), the portion of Rule 60(b) upon which Wal-Mart's Motion rests, addresses strictly legal errors. In this case, the alleged mistake involved overlooking facts that were on the record, a factual error.

Third, Rule 60(b) can only be used when the movant has a meritorious defense. In this case, Wal-Mart had no meritorious defense as determined by the Jury.

Finally, under the circumstances in this case, the Court agrees with Judge Friendly and the courts that have reasoned that "there is good sense" in permitting that trial court to correct its own error rather than further subsuming the resources of the Parties and the Appeals Court to correct the error. Further, Judge Aldrich's decision contra involved a motion for remand and an erroneous decision of law, neither of which exist in this case.

Even if considered, Wal-Mart's Rule 60(b) Motion is without merit. It is without merit for at least two reasons.

First, the policy supporting the ban on review of a remand decision is to spare the parties undue delay and interruption of the litigation and further postponement in reaching the merits of the dispute. Since, in this case, the merits of the dispute have been reached, to remand this matter now would only serve to waste precious judicial resources by having the matter heard for the

second time in a different court.

The second reason Wal-Mart's Rule 60(b) Motion is without merit is based upon what would happen if the Motion were granted. If the Motion were granted, the matter would be remanded.[3] If it were remanded, it would be remanded after final judgment has been entered. However, remands after final judgment is entered are reviewable by this Court, among others. A review would show that this Court had subject matter jurisdiction at the time the remand order was issued and at the time judgment was entered.

## D. Conclusion

Wal-Mart's Motion for Relief From Judgment Pursuant To Rule 60(b) (doc. #215) is OVERRULED and not considered on the merits because Rule 60(b) cannot now be used to overcome Wal-Mart's failure to seek redress prior to final judgment, because it addresses erroneous legal conclusions and not factual mistakes, because Wal-Mart did not have a meritorious defense, and because it is provident to permit the trial court to correct its own error rather than further subsuming the resources of the Parties and the Appeals Court to correct the error.

If Wal-Mart's Rule 60(b) Motion were to be considered on the merits, it would also fail. It would fail because it would be violative of the policy behind the ban on review of removal decisions and because, if it were granted, this Court would review its remand decision and reach the same result.

## IV. THOMAS & MARKER'S MOTION FOR PRE-JUDGMENT INTEREST

Thomas & Marker is seeking a total of $343,946.13 in pre-judgment interest on its

---

[3]None of the cases cited by Wal-Mart call for dismissal of an improvidently remanded controversy.

breach-of-contract claim against Wal-Mart. (Doc. #218.) Wal-Mart does not argue that Thomas & Marker is not entitled to pre-judgment interest nor does Wal-Mart challenge the annual interest rates used by Thomas & Marker. Wal-Mart does, however, argue that Thomas & Marker's calculation of pre-judgment interest is inflated. Relevant law regarding pre-judgment interest will first be set forth followed by an analysis of Thomas & Marker's request.

A.     **Relevant Legal Provisions**

Ohio law provides for an award of pre-judgment interest in a breach-of-contract action such as this. Ohio Rev. Code § 1343.03(A); *Royal Electric Construction Corp. v. Ohio State University*, 652 N.E.2d 687, 690 (Ohio 1995). The award of pre-judgment interest is compensation to the successful party for the period of time between accrual of the claim and judgment. *Royal*, 652 N.E.2d at 692. Thus, interest is calculated, according to the Ohio Supreme Court, for the period of time from the accrual of the claim until judgment. *Id.* Finally, the claim accrues when it becomes due and payable. *Scotts Company v. Central Garden & Pet Company*, 403 F.3d 781, 790 (6th Cir. 2005).

Wal-Mart argues that interest is calculated in this case from when Thomas & Marker substantially completed work on the project until judgment. In support of this argument, Wal-Mart cites *Complete General Construction Co. v. Ohio Department of Transportation*, 760 N.E.2d 364, 372 (Ohio 2002). However, Wal-Mart's argument is unavailing as applied to this case.

In *Complete General*, the Ohio Supreme Court was addressing the method of calculating unabsorbed home office overhead that arose due to the government delay of a highway project. The unabsorbed home office overhead costs ran until the contractor substantially completed the

project. Then, to satisfy the requirement that contractor be compensated for the period of time between accrual of the claim and judgment, pre-judgment interest was awarded from when the contractor substantially completed the project until judgment. In *Complete General*, the time when the contractor's claim accrued was when the contractor substantially completed the project. However, this is not to say that, in every contract case, the time when a successful party's claim begins to accrue is when the successful party substantially completes the project.

Interest stops accruing at the date of judgment. The date of judgment in this matter is clearly January 15, 2009.

Interest is to be recovered at an annual rate set by the Ohio Department of Taxation. Ohio Rev. Code §§ 1343(A) and 5703.47. The annual rates set by the Ohio Department of Taxation that are relevant to this matter are:

6% for 2006
8% for 2007
8% for 2008
5% for 2009

(Ohio Department of Taxation Administrative Journal Entries dated Oct. 17, 2005, Oct. 16, 2006, Oct. 15, 2007 and Oct. 15, 2008.)

**B.      Analysis**

Thomas & Marker seeks prejudgment interest on the unforeseen rock claim, on the retainage and on the non-rock related change orders. Each will be addressed seriatim.

**1.      The Unforeseen Rock Claim**

The purpose of pre-judgment interest is to compensate the successful party for the period of time between accrual of the claim and judgment There are two issues, then, regarding the unforeseen rock claim: the amount of the claim and the date it accrued.

In this case, part of the unforeseen rock claim accrued on January 11, 2006, when Wal-Mart first rejected Change Order 4.0. An additional unforeseen rock claim accrued on August 31, 2006, when Thomas & Marker received Wal-Mart's undated rejection of Change Order 4.3.

Change Order 4.0 was for $1,083,304.66. However, Thomas & Marker did not pay $22,787.66 to Garber Bros. and saved (did not pay) $263,083.02 on what it owed Jergens Bales. Therefore, Thomas and Marker did not loose the use of a total of $285,870.68 of the money it was due from Wal-Mart on January 11, 2006. Thomas & Marker is due pre-judgment interest on the amount of $797,433.98 from January 11, 2006, until the date of judgment which was January 15, 2009.

Change Order No. 4.3 was for an additional $188,613.90. Thomas and Marker received Wal-Mart's undated rejection of Change Order No. 4.3 on August 31, 2006. Therefore, Thomas & Marker is due pre-judgment interest on the amount of $188,613.90 from August 31,2006, until the date of judgment which was January 15, 2009.

The calculation of pre-judgment interest due to Thomas & Marker on the unforeseen rock claim is as follows:

1)     $797,433.98 (Change Order No. 4.0)

       $46,404.10 - 2006 (6% per annum - 01/11/06 to 12/31/06)
       $63,794.72 - 2007 (8% per annum - 01/01/07 to 12/31/07)
       $63,794.72 - 2008 (8% per annum - 01/01/08 to 12/31/08)
       $ 1,638.56 - 2009 (5% per annum - 01-01-09 to 01-15-09)
    $175,632.10   Interest on Change Order No. 4

2)     $188,613.90 (Additional costs submitted in Change Order No. 4.3)

       $3,813.62 - 2006 (6% per annum - 08/31/06 to 12/31/06)
      $15,089.11 - 2007 (8% per annum - 01/01/07 to 12/31/07)
      $15,089.11 - 2008 (8% per annum - 01/01/08 to 12/31/08)
        $387.56 - 2009 (5% per annum - 01/01/09 to 01/15/09)

$34,379.40   (Interest on additional costs submitted in Change Order No. 4.3)

The pre-judgment interest due to Thomas & Marker on their unforeseen rock claim is

$175,632.10 plus $34,379.40 for a total of $210,011.50.

## 2.    Retainage

The purpose of pre-judgment interest is to compensate the successful party for the period

of time between accrual of the claim and judgment. There are two issues, then, regarding the

retainage claim: the amount of the claim and the date it accrued. The date the claim accrued is

the date the amount became due and payable.

Thomas & Marker argues that it was entitled to receive retainage in the amount of

$410,469.68 on November 24, 2006, when it submitted a request therefore and additional

retainage in the amount of $104,379.16 on January 31, 2008, when it requested the full amount

of the retainage due.

Wal-Mart responds that retainage was not due to Thomas & Marker until the last lien was

released on August 22, 2008. Wal-Mart's basis for this argument is contract language that

provides that, "neither final payment nor the remaining retainage shall become due" until such

time as the Contractor submits any unconditional lien releases as may be required by the Owner.

The Contract does not require that Thomas & Marker wait until the substantial

completion date to receive retainage. The filing of the liens by Thomas & Marker and others was

precipitated by Wal-Mart's breach of contract by refusing to pay for the cost of removing

unforeseen rock. The Jury has determined that Wal-Mart breached the contract and that Thomas

& Marker substantially performed its duties under the Contract. Thus, Thomas & Marker used its

breach of contract to avoid timely paying retainage and is attempting to use its breach of contract

to avoid paying at least part of the pre-judgment interest on the retainage. This it cannot do. Thomas & Marker is entitled to pre-judgment interest on the retainage amount of $410,469.68 beginning on November 25, 2006, and on the retainage amount of $104,379.16 beginning February 1, 2008.

The Parties also dispute the end date for the calculation of pre-judgment interest. Thomas & Marker argues that the end date is January 15, 2009, the date that final judgment was entered in this matter. Wal-Mart argues that the end date for calculation of pre-judgment interest should be December 1, 2008, the date that Wal-Mart stipulated to liability for the retainage and tendered unconditional payment to Thomas & Marker. Thomas & Marker declined to accept this tender because Wal-Mart unilaterally reduced the amount of this tender to reflect a set-off in the amount of $181,000.00 for Wal-Mart's waterline claim. Thus, due to the "strings attached," Wal-Mart can hardly be said to have tendered unconditional payment for the outstanding retainage on December 1, 2008. The end date for the calculation of pre-judgment interest on the retainage will be January 15, 2009, the date judgment was entered in this case.

The calculation of pre-judgment interest due to Thomas & Marker on the retainage is as follows:

1)      $410,469.68 (Retainage per Certificate for Payment No. 14)

     $2,429.08 - 2006 (6% per annum - 11/25/06 to 12/31/06)
     $32,837.57 - 2007 (8% per annum - 01/01/07 to 12/31/07)
     $32,837.57 - 2008 (8% per annum - 01/01/08 to 12/31/08)
     $843.43 - 2009 (5% per annum - 01-01-09 to 01-15-09)
     $68,947.65

2)      $104,379.16 (Additional retainage submitted per Certificate for Payment No. 15 )

     $7,643.06 - 2008 (8% per annum - 02/01/08 to 12/31/08)
     $214.48 - 2009 (5% per annum - 01/01/09 to 01/15/09)

$7,857.54

The pre-judgment interest due to Thomas & Marker on the retainage is $68,947.65 plus $7,857.54 for a total of $76,805.19.

**3.      Non-Rock Related Change Orders**

The purpose of pre-judgment interest is to compensate the successful party for the period of time between accrual of the claim and judgment. There are two issues, then, regarding the non-rock related change orders, the amount of the claims and the date they accrued. The date the claims accrued is the date the amounts became due and payable.

Thomas & Marker argues that one of the non-rock related Change Orders, Change Order No. 27 in the amount of $10,179.81, was rejected by Wal-Mart on August 17, 2006 and the other two non-rock related Change Orders, Change Order No. 32.1 and Change Order No. 34 totaling $33,473.13, were rejected by Wal-Mart on February 14, 2007. Thomas & Marker also argues that the pre-judgment interest should be calculated until January 15, 2009, the date final judgment was entered in this case.

Wal-Mart offers no alternative date for the beginning of pre-judgment interest on Change Order No. 27. However, as it did with the retainage, Wal-Mart responds that payment for Change Order No. 32.1 and Change Order No. 34 was not due to Thomas & Marker until the last lien was released on August 22, 2008. As with the retainage more fully addressed above, Wal-Mart cannot use its breach of contract to avoid timely paying the non-rock related change orders and pre-judgment interest thereon.

Wal-Mart also offers an alternative date for the end of pre-judgment interest on the non-rock related change orders. As it did regarding the retainage, Wal-Mart argues that the end date

for calculation of pre-judgment interest on the non-rock related change orders should be December 1, 2008, the date that Wal-Mart stipulated to liability for the non-rock related change orders and tendered unconditional payment to Thomas & Marker. As discussed more fully above, this argument is unavailing. The end date for the calculation of pre-judgment interest on the non-rock related change orders will be January 15, 2009, the date judgment was entered in this case.

The calculation of pre-judgment interest due to Thomas & Marker on the non-rock related change orders is as follows:

1)      $10,179.81 (Change Order 27 rejected 08/17/06)

        $227.58 - 2006 (6% per annum - 08/17/06 to 12/31/06)
        $814.38 - 2007 (8% per annum - 01/01/07 to 12/31/07)
        $814.38 - 2008 (8% per annum - 01/01/08 to 12/31/08)
        $20.92 - 2009 (5% per annum - 01-01-09 to 01-15-09)
     $1,877.26

2)      $33,473.13 (Change Orders 32.1 and 34 rejected 02/14/07)

        $2,362.38 - 2007 (8% per annum - 02/14/07 to 12/31/07)
        $2,677.85 - 2008 (8% per annum - 01/01/08 to 12/31/08)
        $68.78 - 2009 (5% per annum - 01/01/09 to 01/15/09)
     $5,109.01

The pre-judgment interest due to Thomas & Marker on the retainage is $1,877.26 plus $5,109.01 for a total of $6,986.27.

## C.    Conclusion

Based upon the above calculations, Thomas & Marker is entitled to pre-judgment interest as follows:

1)      $210,011.50   Unforeseen Rock Claim
2)        $76,805.19   Retainage
3)         $6,986.27   Non-Rock Related Change Orders

$293,802.96

Thomas & Marker's Motion for Pre-Judgment Interest (doc. #218) is GRANTED. Thomas & Marker is hereby awarded pre-judgment interest in the amount of $293,802.96.

## V.  PREVAILING PARTY DETERMINATION

Prior to the Trial of this matter, both Parties agreed that the Court would decide which, if either, was the prevailing party. This decision would, of course, be made after Trial.

Both parties have now submitted their arguments as to who was the prevailing party. Thomas & Marker argues that it is the prevailing party and Wal-Mart argues that both Parties are prevailing parties.

## A.  Relevant Factual Background

The relevant factual background for the prevailing party determination begins with Thomas & Marker's First Amended Complaint. (Doc. #13.) The First Claim for Relief in Thomas & Marker's First Amended Complaint is against Wal-Mart for breach of contract. The Second Claim for Relief is against Wal-Mart for breach of an implied warranty of suitability of plans, specifications and geotechnical reports. The Third Claim for Relief is against Wal-Mart for breach of an implied warranty of accuracy of plans, specifications and geotechnical reports. Thomas & Marker's Fourth Claim for Relief is against Wal-Mart for unjust enrichment (quantum meruit and quantum valabant). The Fifth Claim for Relief is against Wal-Mart for promissory/equitable estoppel. The Sixth Claim for Relief is against Wal-Mart for breach of an implied duty of good faith and fair dealing. The Seventh Claim for Relief is for costs, expenses and fees pursuant to § 23.16 of the Construction Agreement. Thomas & Marker's Eighth Claim for Relief is for foreclosure on a mechanic's lien.  The Ninth Claim for Relief is against Wal-

Mart for fraud in the inducement. Thomas & Marker's Tenth, Eleventh, Twelfth, Thirteenth, Fourteenth, Fifteenth and Sixteenth Claims for Relief are against Jergens Bales for breach of contract (two claims), breach of the implied duty of good faith and fair dealing, tortious interference with business relationship, unjust enrichment, indemnification and contribution.

Thomas & Marker's Second, Third, Fourth, Fifth Sixth and Ninth Claims for Relief were dismissed by the Court upon Wal-Mart's Motion for Partial Summary Judgment. (Doc. #128.) Thomas & Marker's Eighth, Tenth, Eleventh, Twelfth, Thirteenth, Fourteenth, Fifteenth and Sixteenth Claims for Relief were dismissed with prejudice by Thomas & Marker upon agreement of the Parties. (Doc. #92.)

Wal-Mart answered Thomas & Marker's First Amended Complaint. (Doc. #16.) Included with Wal-Mart's Answer are counterclaims against Thomas & Marker. The First Counterclaim is for breach of contract, the Second Counterclaim is for unjust enrichment, the Third Counterclaim is for promissory estoppel and the Fourth Counterclaim is for costs, expenses and fees pursuant to § 23.16 of the construction contract. Also included with Wal-Mart's Answer is Wal-Mart's Third-Party Complaint against Ohio Farmers Insurance Company for action on bond and a declaratory judgment. Wal-Mart did not pursue its Second, Third and Fourth Counterclaims through the Final Pretrial Order or its proposed Jury Instructions.

Ultimately, Thomas & Marker's breach-of-contract claim on the rock excavation, retainage and non-rock related changes orders; Wal-Mart's breach-of-contract Counterclaim on the waterline and Wal-Mart's third party complaint against Ohio Farmers Insurance were tried. The outcome of Wal-Mart's third party complaint was tied to the outcome of the breach-of-contract actions.

**B.      Relevant Legal Provisions**

The general rule in American litigation is that both sides pay for their own attorney's fees. *Key Tronic Corp. V. United States*, 511 U.S. 809, 814 (1994). This law can be varied by "substantive law governing the action," including provisions in contracts relating to attorneys' fees. *Clarke v. Mindis Metals, Inc.*, 99 F.3d 1138, 1996 WL 61667 at *7 (6th Cir. 1996).

In this case, the Contract governing the relationship between Thomas & Marker and Wal-Mart includes such a provision. Section 23.16 of the Construction Contract reads:

> In the event of any action or proceeding brought by either party against the other under the Contract Documents, the prevailing party will be entitled to recover all costs and expenses, including court costs and reasonable attorneys' fees.

Where, as here, the contract includes no definition of the term "prevailing party," the term is to have the meaning given to it by the case law under Fed. R. Civ. P. 54(d)(1). *Id.* at *10. Under Rule 54(d), the general principle is that costs are awarded to the prevailing party at the discretion of the district court. *Id.*

Generally, the party in whose favor judgment is rendered is considered the prevailing party. 10 Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, *Federal Practice and Procedure* § 2667(3d ed. 1998). This definition applies whether it is the result of a full trial on the merits or it is the result of a settlement. Id. Finally, a dismissal of an action, whether on the merits or not, generally means that the defendant is the prevailing party. Id.

A party may be the "prevailing party" even if that party is not awarded her or his entire claim. *Id.*(citing *Zackaroff v. Koch Transfer Co.*, 862 F.2d 1263, 165-66 (6th Cir. 1988)). Said another way, a party need not prevail on all issues to be deemed a "prevailing party." *Id.*(citing *United States v. Mitchell*, 580 F.2d 789, 793-94 (5th Cir. 1978)). However, where each of the

parties breaches a contract, or where each party performed their core obligations under the contract with a good faith effort, there can be no single prevailing party. *Novi Promenade Associates Limited Partnership v. Target Corp.*, No. 02-CV-72890, 2005 WL 2417110 at *11 (E.D. Mich. Sept. 30, 2005). In another example, a party who prevailed on only one of two claims may be deemed the prevailing party. *Lewis v. Pennington*, 400 F.2d 806 (6th Cir. 1968), *cert. denied*, 393 U.S. 983 (1968). Also, a plaintiff who has recovered an amount over a defendant's counterclaim is a prevailing party. *Don Cartage Company v. United States*, 289 F.2d 623 (6th Cir. 1961).

## C.    Analysis

In this case, Wal-Mart argues that both Parties are prevailing parties because both Parties prevailed on some, but not all, of the issues raised.[4] Wal-Mart reasons that Thomas & Marker brought nine causes of action against Wal-Mart, and one of them was dismissed by Thomas & Marker and seven of them were dismissed by the Court on summary judgment.

Wal-Mart also argues that Thomas & Marker did not prevail in obtaining all of the damages it demanded in its Complaint. Thomas & Marker pled that it was entitled to $1,296,400.16 in damages in connection with the unforeseen rock but was ultimately awarded only $986,047.88. However, the ultimate award for unforeseen rock excavation was reduced by $22,787.66 that was part of the initial claim but ultimately not paid to Garber Bros. and by $263,083.02 that was part of the initial claim but ultimately not paid to Jergens Bales as the result of a settlement with Jergens Bales.

Wal-Mart also argues that section 23.16 does not provide for attorneys' fees for claims

---

[4]Later in its Brief, Wal-Mart asserts that neither Party should be deemed to be the prevailing party.

not brought under the contract documents such as a claim for waiver. However, Thomas & Marker was successful in proving that Wal-Mart waived certain Contract provisions and, as a result, breached the Contract. Therefore, the claims upon which Thomas & Marker were successful were essentially brought under the contract.

Finally, Wal-Mart argues that Thomas & Marker was unsuccessful in obtaining punitive damages as pled. However, punitive damages are not available on a contract action and were, thus, not included in the Trial.

Thomas & Marker argues that it should be the prevailing party. Thomas & Marker reasons that the principal dispute between it and Wal-Mart relates to Thomas & Marker's claim for compensation arising from its excavation of unforeseen rock. This dispute resulted in Wal-Mart withholding retainage due Thomas & Marker and refusing to pay three Change Orders unrelated to the rock excavation. Finally, the trial of this matter involved four different claims: the unforeseen rock claim, the retainage claim, the claim for non-rock related Change Orders and Wal-Mart's counterclaim regarding the waterline. Thomas & Marker was successful at trial on all four of these claims.[5]

Thomas & Marker's six claims for relief that were dismissed on summary judgment were other bases, relying upon liberal pleading standards, for seeking damages from Wal-Mart for the unforeseen rock excavation and for the non-rock related Change Orders. While Wal-Mart may have been successful in obtaining dismissal of these six claims for relief, Thomas & Marker was ultimately successful, under its First Claim for Relief, in obtaining damages for the unforeseen rock excavation and for the non-rock related Change Orders. Also, Thomas & Marker was

---

[5]The Parties stipulated to Wal-Mart's liability on the retainage and non-rock related claims during the Trial.

ultimately successful on the only Counterclaim brought against it by Wal-Mart. In addition to being successful on its breach-of-contract action and on Wal-Mart's Counterclaim, Thomas & Marker was successful on obtaining the retainage that was being withheld by Wal-Mart.

**D.      Conclusion**

Judgment was ultimately rendered by the Jury for Thomas & Marker on all of the issues raised by Thomas & Marker and on Wal-Mart's Counterclaim against Thomas & Marker. Thomas & Marker's dismissed causes of action were merely other ways of seeking relief on its breach-of-contract claim. Therefore, Thomas & Marker was clearly the "prevailing party" in this action.

**VI.     WAL-MART'S MOTION FOR A STAY OF EXECUTION**

Wal-Mart has also submitted a motion for a stay of execution of judgment and of any proceedings to enforce the Court's Judgment pursuant to Fed. R. Civ. P. 62. (Doc. #216.) The time has run and Thomas & Marker has not responded.

Wal-Mart requests a stay of execution pending the disposition of post-trial motions and, if necessary, an appeal. Each request will be addressed seriatim.

**A.      Stay of Execution of Judgment Pending Disposition of Post-Trial Motions**

All of the pending post-trial motions are addressed herein. Therefore, there is no legal basis for staying this matter pending the Court's ruling on any post-trial motions.

**B.      Stay of Execution of Judgment Pending Appeal**

The Federal Rules of Civil Procedure provide that, if an appeal is taken, the appellant may obtain a stay by supersedeas bond. Fed. R. Civ. P. 62(d). The bond may be given upon or after filing the notice of appeal or after obtaining the order allowing the appeal. Id. The stay is

effective when the court approves the bond. Id.

However, an adequate supersedeas bond could be construed, at the discretion of the court, to be no supersedeas bond at all. *Irvine v. Akron Beacon Journal*, 770 N.E.2d 1105, 1122 (Ohio Ct. App. 2002). For example, courts have found no supersedeas bond where the appellant was financially solvent and had well-established ties to the local community.

Wal-Mart now argues that, as reflected in Wal-Mart's financial statements, Thomas & Marker is in no danger of being unable to collect on its judgment. However, an appeal has not yet been taken. Further, as is well known, financial statements are merely a look back and not a look forward. Finally, as is also now well known, what may clearly appear to be a financially healthy company one day, may become a bankrupt company the next day. Therefore, the Court declines to find that no supersedeas bond is necessary in this case.

Finally, Wal-Mart asserts that it will post a bond in the amount of $1,546,301.41, the full amount of the judgment, or in any other reasonable amount that the Court may deem appropriate. The amount specified by Wal-Mart is not the full amount due Thomas & Marker since it does not include attorneys' fees or pre-judgment interest or post judgment interest. Further, the Court does not have before it adequate information to determine the total amount due Thomas & Marker. Therefore, the Court declines to set a supersedeas bond at this time. Wal-Mart's Motion for a Stay of Execution (doc. #216) is OVERRULED.

**VII.    SUMMARY**

Wal-Mart's Renewed (fourth) Motion for Judgment as a Matter of Law (doc. #212) is OVERRULED. There is a legally sufficient basis for a reasonable jury to have found that Wal-Mart waived the necessary Contract requirements and breached the Contract.

Wal-Mart's Motion for a New Trial Or, In the Alternative, for Remittitur (doc. #213) is OVERRULED. Wal-Mart has not shown that the verdicts on Thomas & Marker's breach-of-contract claim or on its Counterclaim for breach of contract are against the weight of the evidence or that the damages are excessive or the trial was unfair or that a remittitur is required.

Wal-Mart's Motion for Relief From Judgment Pursuant To Rule 60(b) (doc. #215) is OVERRULED. This Motion is overruled and not considered on the merits for the reasons cited above. Further, if it were to be considered on the merits, it would fail for the reasons cited above.

Thomas & Marker's Motion for Pre-Judgment Interest (doc. #218) is GRANTED. Thomas & Marker is hereby awarded pre-judgment interest in the amount of $293,802.96.

Thomas & Marker was clearly the "prevailing party" in this action. (Docs. #214, 217.) Judgment was ultimately rendered by the Jury for Thomas & Marker on all of the issues raised by Thomas & Marker and on Wal-Mart's Counterclaim against Thomas & Marker.

Finally, Wal-Mart's Motion for a Stay of Execution (doc. #216) is OVERRULED. All pending post-trial motions have been addressed and the Court does not have before it adequate information to determine the total amount due Thomas & Marker.

This Entry and Order shall constitute a final judgment. There is no just cause for delay.

**DONE** and **ORDERED** in Dayton, Ohio this Twenty-Seventh day of April, 2009.

                                                  **s/Thomas M. Rose**
                              _____
                                                  THOMAS M. ROSE
                                      UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record